Upon the former hearing, this case was carefully examined and considered, and after being retained under an advisari, decided, and our conclusion announced at the succeeding term (82 N.C. 504). To the full and elaborate argument now addressed to us on behalf of the plaintiff for a revision of the opinion then formed, we have given the attention due to the importance of the case and the principle involved, and now proceed to announce the result.
Two errors are assigned in the application for a re hearing [rehearing]
1. No exception having been taken to the charge in the particular declared to be erroneous or in any other, the point of law, upon which the new trial is granted according to the settled practice was not open to the defendant upon the appeal. *Page 194 
2. The erroneous instruction only affects the quantum of damages, and the new trial should be restricted to that issue, leaving undisturbed the findings upon the others.
I. The first alleged error rests upon a misconception of the decision and the reasoning by which it is supported in the opinion, arising, perhaps, from the prominence given to the instructions of the court. This will appear from a brief recapitulation of what transpired at the trial and bears upon the question involved.
During the trial the plaintiff was allowed to prove, against the defendant's objection, that his intestate was administrator of the estate of one Jno. M. Long, which was largely in debt, and to pay which it would be necessary to sell his real estate of the value of $22,000, as had been done by the succeeding administrator de bonis non, the usual allowance of commission on which was from 2 1/2 to 5 per cent. on the amount of sales, upon the issue of damages sustained by the intestate's premature death. The reception of the evidence is distinctly assigned in the record as error. This court held, and such is still our opinion, that the evidence was admissible and proper to be heard by the jury, in passing upon the value of the intestate's life, if prolonged, to those beneficially interested in its preservation, and to whom the fruits of his skill and labor would belong. It tended to show his business qualifications and the compensation which one of his capacity and repute might be expected to obtain. In other words, as expressed in the opinion, it assisted the jury in determining "what reasonable expectation there was of pecuniary benefits from the continuance of the life of the deceased." For this restricted purpose the testimony was competent, and the use to be made of it ought to have been explained, then, or afterwards in the charge to the jury. But it seems to have been admitted generally and without qualification, notwithstanding the objection, and left to the jury to draw their own inferences and pass upon *Page 195 
its weight for any purpose. If proper explanations as to the legal force and effect of the evidence had been made in the instructions, the objection would have been met and all cause for complaint removed. But no such explanations were given, and the jury were directed in general terms to "carefully weigh all the testimony bearing on each of the issues submitted to them, and to find each issue as the testimony should satisfy them." They were thus left at liberty to consider the anticipated allowance for services to be rendered, as money lost by his death, and to enter into the measure of damages found in the verdict, thus forming a basis for the estimate of profits for one year, and multiplying the resulting sum by the number of years during which he would probably live. Such is the import of the charge, and this may have been the understanding of the jury in awarding the large sum contained in the verdict, afterwards reduced by the court, with plaintiff's assent, to two-thirds of the amount. The error then consists in admitting the evidence and giving it a direction, and allowing it to be used for an improper purpose to which its competency does not extend, thereby giving point and force to the objection of its being received.
It is error to admit evidence, competent for one purpose only, to be considered and acted on for another and improper purpose. The error lies not only in the omission to make the necessary explanation, but in giving a direction calculated to mislead and which may have misled the jury in rendering their verdict. This is so connected with the facts allowed to be proved as to extend the exception to the reception of the testimony to the disposition afterwards made of it. We have in our own reports a case very similar — State v. Ballard, 79 N.C. 627. There, upon an indictment for fornication and adultery, the admission of one of the accused parties was received without objection from either, and no instructions were asked as to its effect. The *Page 196 
court say: "While, therefore, it (the admission) could not properly be rejected, it was the duty of the judge, either at its introduction or in his charge, to explain to the jury its force and effect, and to tell them it was not to be considered as any evidence against the woman. In failingto do this and submitting all the evidence to the jury, without suchexplanation there is error, invalidating the verdict."
But we are not prepared to concede the proposition, so broadly and strenuously asserted in the argument, and in some degree countenanced by what is said in Williamson v. Canal Co., 78 N.C. 156, and perhaps in other preceding cases, that no errors, however palpable and hurtful, committed in the administration of the law by the action of the judge, are capable of correction unless specially pointed out in an exception on the record. The case prepared on an appeal under our practice is said to be in the nature of a bill of exceptions, and the functions of the appellate court analogous to those exercised by a court of errors, and for most purposes the comparison is admissible.
But the exercise of the revising power of this court is not restricted, as is that of a court of errors. The latter can only reverse and annul for errors assigned, while this court may grant a new trial and restore the case to the condition it occupied before the error was committed, and it may then, avoiding the error, proceed to a final determination. Still, for general purposes, the analogy may be recognized, and we unhesitatingly reaffirm the general rule governing appeals declared in the numerous adjudications cited for the plaintiff. But the rule itself is not without qualification, and enforced, would in some cases lead to disastrous consequences. For the purpose of illustration, let us suppose a case on trial the indisputed facts of which make the prisoner's offence to be manslaughter, and yet under the erroneous charge of the judge the jury find a verdict of murder, and all this fully appears on the record. Because of the *Page 197 
inadvertence of counsel, the misapprehension of the judge as to the law and the consequent misdirection given to the jury are not specially pointed out in an exception, and yet the fatal error is apparent to the court. Is the court, in the observance of a strict rule of practice, compelled to shut its eyes to the injustice done the prisoner and affirm a judgment which wrongfully takes his life? In such a case, would not the court interfere and correct a manifest error, although overlooked at the trial, and, therefore, not the subject of a distinct exception? In State v. Johnson, 1 Ired., 354, where the judge corrected the misunderstanding common to the counsel on both sides as to what was the law, and expounded it himself to the jury, GASTON, J., speaking for the court, thus defines the duties of the judge presiding at jury trials: "It has not been questioned, and it cannot be questioned, but that it is the duty of a judge who presides at the trial of a cause, whether civil or criminal, to correct every misrepresentation of law made to a jury, although admitted to be law by the parties or their counsel. He does not preside merely as a moderator, to enforce order and decorum in a discussion, addressed to a body with whose deliberations he has no concern, and over whose judgment he is to exercise no influence; but he is an integral part of that mixed tribunal which is to pass upon the issue; and while he is forbidden to give to the jury an opinion whether any fact is sufficiently proved, he is bound to declare and expound to them the law arising upon the facts."
The exception to the general rule, if indeed it be fairly within its purview, is expressed with clearness by the eminent judge who for so many years presided over this court and has enriched its records with the fruits of his profound learning and labors, in Bynum v. Bynum, 11 Ired., 632, and we again adopt his exposition of the law: "Although it be not error to refrain from giving instructions, unless they *Page 198 
are asked, yet care must be taken, when the judge thinks it proper, of his own motion, or at the party's, to give them, that they be not in themselves
erroneous, or so framed as to mislead the jury."
It was suggested in the argument that the original case on file shows that there was an exception in the court below, which brought the point on which the decision turned before this court for review, and therefore it does not sustain the ruling. If this were so, it would not detract from the force of the proposition enunciated without reference to that fact, in language intended to guide and instruct in the future practice of the courts. But on examination it will be found that the distinction in the formalities required in the execution of wills of real and personal estate, and in force when this disputed instrument was made, was not adverted to in argument or in any manner called to the notice of the judge at any time during the trial before the jury. The failure of the judge to instruct them that the attestation of subscribing witnesses in the presence of the testator was not essential to the validity of a will conveying personal estate, is first mentioned and assigned, after the rendition of the verdict, as one of the grounds on which a new trial is demanded. This does not impair the authority of the case as a precedent sustaining the ruling made.
"It is the right and duty of counsel," remarks BYNUM, J., commenting on a similar omission in State v. Caveness, 78 N.C. 484, "before or during the charge and before the jury shall be sent out to consider of their verdict, to ask for such instruction to the jury, both as to evidence improperly admitted and that which has been stated correctly, and to declare and explain the law arising thereon."
The same principle decided in Bynum v. Bynum, has the recognition and sanction of the recent case of State v. Austin, 79 N.C. 624, where the court, in describing the offence with which the defendant was charged, omitted to mention one *Page 199 
of its essential elements. The court, in reference to the misdescription, say: "Had the judge simply omitted to give an instruction to which the defendant would have been entitled, had he asked it, he would not have any just ground of complaint." * * * "But when the judge undertakes to state the law, he must state it correctly." Here no exception was taken to this part of the charge and yet the error was noticed and remedied, by sending the case to another jury.
In Grist v. Backhouse, 4 D. B., 302, DANIEL, J., thus expresses the opinion of the court: "The counsel for the plaintiffs insists that the defendant cannot now object to this error, because there was no specific exception taken at the trial. The defendant had placed on record his plea; it was for the plaintiffs to support the affirmative of the issue on that plea. The court misdirected the jury as to the law on the trial of the issue, and told them that the evidence offered was sufficient for the plaintiff. This error appears on the record, and for that the judgment must be reversed and a new trial awarded."
So GASTON, J., in Ring v. King, Ibid., 164, on the same point, uses this language: "It must not be understood, from our noticing this objection, that we allow questions of law to be raised here, except such as appear on the record, strictly so called, which were not before the court from which the appeal was taken. Our rule is to regard as nearly as we can the case made by the judge in the light of a bill of exceptions for specified errors. The presumption is, that whatever is not complained of was rightfully done. But we cannot presume against what appears. If by any reasonable intendment, we could suppose facts shown which, notwithstanding those admitted, constituted the defendant's act a trespass — inasmuch as the opinion of the judge on that point was not directly called for — we might hold it our duty to make the amendment. But if we cannot, and we *Page 200 
do not see how we can, then the jury was misdirected upon a question of law, presented by the pleadings and the evidence upon a matter material to the issues which they had to try. The consequences of the mistake * * * have been a verdict and judgment against law. This is an error which whenshown to us we are bound to correct."
To like effect are the words of NASH, J., in Bailey v. Pool, 13 Ired., 404: "Nor is it error in a judge, or any officiousness, to bring to the notice of the jury, principles of law, or facts bearing upon the case, which counsel may have omitted in argument. If important to the decision of the case, it is his duty to do so."
These references to the practice which has heretofore prevailed are sufficient to show that the rule which forbids the hearing of an objection, not taken, and which ought to have been taken, at the trial, does not embrace the case where the judge in response to a request for an instruction or of his own accord misdirects the jury upon a material question of law, injuriously to the appellant by which they have been or may have been misled in rendering the verdict, and the error is patent upon the record, such error is open to correction, and the complaining party is not required to interrupt the delivery of the charge, by then stating the objection. As to such error, the appeal itself may be treated as an exception, authorizing a revision and a remedy. We have re-examined and carefully considered the question, because of its practical importance, and that the rule may be fully understood. But its decision is not necessary in the present case for reasons which have been already stated.
II. The second assignment of error involves a question of more difficult solution. Our attention was not called in the former argument to the point whether the new trial should be partial, confined to the issue as to the damages, *Page 201 
or be general, and re-open the whole controversy. It is consequently not adverted to in the opinion.
Ordinarily, for an error committed during the progress of the trial, in the improper admission or rejection of evidence, or in the charge to the jury, material upon any issue, the verdict is set aside entirely, for the obvious reason that it cannot be seen to what extent it may have influenced the jury upon the other findings. It will be set aside in part only when it plainly appears the erroneous ruling would not and did not enter into their consideration in passing upon the remaining issues. The character of the new trial is therefore rather a matter of sound discretion, than of strict right. The cases cited for the plaintiff (with the exception of that ofHutchison v. Pepper, 4 Saun., 555, where it is held that a partial new trial may be had, when the right to move for it is reserved with leave of the court, or where justice has not been done, and yet greater injustice would result from setting the matter at large) are decisions in the court of Massachusetts. Kent v. Whitney, 9 Pick., 62; Wems v. Col. Ins. Co., 12 Pick., 279; Boyd v. Brown, 17 Pick., 453; Robbins v. Townsend, 20 Pick., 345.
Without examining these adjudications in detail, or inquiring into the constitution and functions of the court which made them, and its relation to nisi prius trials, we will only say they do not accord with the rules and the practice of this court, as a tribunal created for the correction of errors in the inferior courts. But there are precedents to be found in our own reports. Thus in Key v. Allen, 3 Murph., 523, where in an action of detinue the jury assessed damages for detaining the slaves but failed to find their value, it was decided that a distringas should issue, and if the slaves were not delivered, a writ of enquiry issue to ascertain their value.
In Holmes v. Godwin, 71 N.C. 306, BYNUM, J., declares: "The power to award a partial new trial, or an inquiry of *Page 202 
damages, when they have been erroneously assessed without disturbing the findings which dispose of the merits of the case, is both convenient and useful, however delicate and difficult may be its application in particular cases. It certainly should not be exercised except in a clear case." See also Merony v. McIntyre, 82 N.C. 103.
The erroneous ruling in the present case is entirely distinct and separable, and seems to fall within the class which admits of a restricted new trial, confined to the damages only, and this is all to which the defendant is fairly entitled. The judgment will be reformed so as to re-open that issue only, and in other respects it is affirmed.
PER CURIAM. Judgment modified.