## STATE v. PETER L. NOLAND.

*Comments of Counsel—New Trial.*

Where counsel in addressing the court upon a motion for a mistrial on the ground of alleged fraud in selecting the jury, said, that two of the jurors had gone into the box " with souls blackened with perjury and bribery," &c., in the presence and hearing of the jury then impaneled, the opposing counsel objecting, and persisted in the use of abusive language towards the jurors during the trial, without being stopped by the court; *Held* to constitute ground for a new trial.  After such errors are committed in the conduct of a cause as are set out in this case, they cannot be cured by the judge in his charge to the jury.

· INDICTMENT against the prisoner and others for rape, tried at Fall Term, 1881, of HAYWOOD Superior Court, before *McKoy, J.*

Verdict of guilty, judgment, appeal by prisoner.

*Attorney General* and *Mr. Fred. C. Fisher*, for the State.

*Messrs. George A. Shuford* and *Reade, Busbee & Busbee*, for the prisoner.

RUFFIN, J. The prisoner with two other persons was charged with having committed a rape upon the person of one Margaret L. Rogers. In consequence of a relationship existing between one of the parties charged and himself, the solicitor of the district at his own request was relieved of the duty of conducting the prosecution, and two other gentlemen of the profession were appointed for that purpose by the court. The trial resulted in a verdict of guilty as to the prisoner Noland only, and after judgment pronounced he appealed to this court. Of the several matters assigned as errors in his behalf, it is necessary that we should consider but one, and as regards that one, a brief statement of facts will suffice.

The trial extended through several days, and on the third day, the counsel who represented the state made a motion to withdraw a juror and make a mistrial, on the ground that fraud had been practiced in organizing the jury, and in support of the motion read in the hearing of the jury (then impaneled) the affidavits of a brother of the prosecutrix, and one Hayner. These affidavits in substance set forth that the affiants were informed and believed that two of the jurors (John James and J. W. Milliner) were related to the prisoners, and yet when interrogated in regard thereto, had disclaimed the relationship in order that they might be taken on the jury, and thus have the opportunity to acquit the accused ; and also that the juror, James, when asked by the state's counsel, had denied having formed and expressed an opinion that the prisoners were not guilty, when in fact he had done so, and as affiants were informed and believed, had declared that he had come to the court house at the instance of their friends, and for no other purpose than to get

37

on the jury; and that the juror, Milliner, had as they were informed and believed, agreed with the friends of the accused to acquit them, and had been instructed what arguments to use, so as to inform his fellow-jurors.

In arguing the motion, the state's counsel, in the presence and hearing of the whole jury, charged the two jurors named with having perjured themselves, and with having corruptly gotten upon the jury with a view to acquit the parties accused. The counsel for the prisoners constantly protested against the reading of the affidavits and the speeches of the counsel in the hearing of the jury, and disclaimed for themselves and the accused all knowledge of any fraud or corrupt practice in selecting the jury.

The court declined to allow the motion on the ground the affidavits did not directly connect the prisoners with the alleged fraudulent conduct and practices of the jurors, and were based, not upon the actual knowledge of the parties making them, but upon information derived from others.

On the day following, the state's counsel renewed the motion for a mistrial, offering in the hearing of the jury the same affidavit of the brother of the prosecutrix, as before, except that it was so amended as to charge that the juror James had not only formed and expressed the opinion the prisoners were innocent, but as affiant was informed and believed had been diligent in his efforts to influence the minds of others, and induce them to adopt the same opinion ; and further, that witnesses whose evidence was material for the state were kept back by the prisoners or their friends, and amongst them one Scott, who had not only been subpœnæd, but unsuccessfully searched for under a *capias*. The affidavit of one Cagle was also read, setting forth that he had heard some one (but whom he did not know) say, that the juror James had declared that he would not believe the evidence of the prosecutrix, even if she swore to it until she grew as black as his hat.

In arguing the motion the second time, the case states that the counsel for the prosecution were more impassioned in their utterances, *and abusive of the jury*, than on the previous day, and that amongst other things it was said by them, that the jurors, James and Milliner, "had gone into the jury box with souls blackened with perjury and bribery, and that all hell could not change their minds;" and this in the presence and hearing of the entire jury.

In opening the closing address to the jury, one of the counsel representing the state said to them, that he desired to offer them some reasons why the prosecutrix should be believed, in spite of the fact that one of their body had declared that he would not credit her statement, if sworn to until she was as black as his hat; and during the progress of his remarks he approached the jury box and stepped upon the foot of the juror James, saying to him "I beg your pardon, I only wanted to wake you up"—the juror, as the case states, not only being awake, but demeaning himself in a manner altogether proper.

It is not possible that the law can give its sanction to a proceeding conducted with so little regard to regularity and decorum, as was the trial of the prisoner in this case. Neither will it permit a verdict to stand and the sentence under it to be executed, which has been rendered under such stress of force and dictation as was brought to bear upon two of the twelve jurors employed, and especially upon the juror James.

To secure for the administration of the law that general respect and confidence, which it is of the highest public interest it should enjoy, it is absolutely essential that the business of the courts should be conducted with becoming gravity and dignity; that their judgments should be seen to be temperately considered and impartially delivered; and above all, that the verdict of the juries concerned should be known to be the result of serious convictions after dis-

passionate and free deliberations.   Appreciating this great necessity, extending alike to the public interests and the individual security, our courts have been constant in the purpose to protect the juries of the country from the approach of every circumstance which might tend unnecessarily to excite their minds or inflame their prejudices.   And if so, how much more important is it to preserve for them a freedom of thought and an independence of action.   The treatment of the juror assailed was altogether without excuse, and happily, without a parallel in the history of our courts, and it was a grave error in the presiding judge to have allowed it.   Its effect must have been to fill the juror's mind with resentment or subdue him with moral fear, and in either event, he was disqualified as a juror in the cause, since he could no longer be capable of giving it an unimpassioned or a just consideration.   The error consists in allowing such a course of conduct to be pursued and so long persisted in.   After its commission under the circumstances it admitted of no cure by anything that could be said in the charge.   The subjection of the mind of the juror, his loss of self-respect, and his apprehension of responsibility to public opinion, could not be relieved.   The prisoner is entitled to a trial by another jury, because he has not been fairly tried by twelve independent, competent, jurors.

This opinion must be certified to the superior court of Haywood county to the end that a *venire de novo* may be awarded by the court.

Error.                                                    *Venire de novo.*