\* THOMAS D. HOLLY v. SALLIE D. HOLLY et al.

*Counsel—Abuse of Privilege—Judge's Charge.*

1. As a general rule, objections to comments of counsel, alleged to be an abuse of privilege, must be made before the case is given to the jury, in order that the Court may, by proper directions, prevent any prejudicial consequences. After verdict the exception should not be entertained.

2. There may, however, be instances where the abuse of privilege is so gross that it will become the duty of the Judge, *ex mero motu*, to interfere.

3. The Judge is not required by the Act of 1796—The Code, §413—to "charge" the jury where the facts at issue are few and simple and no principle of law is involved, unless he is requested to do so ; but in cases where the witnesses are numerous, or the testimony conflicting or complicated, and different principles of law are applicable to different aspects of the case, it is his duty to conform to the requirements of the statute.

(*State* v. *Suggs*, 89 N. C., 527; *State* v. *Sheets, Ibid.*, 543; *Horah* v. *Knox*, 87 N. C., 483; *State* v. *Noland*, 85 N. C., 576; *State* v. *Jones*, 87 N. C., 547; *State* v. *Rogers*, 93 N. C., 524; *State* v. *Morris*, 3 Hawks, 391; *State* v. *Reynolds*, 87 N. C., 544; and *State* v. *Grady*, 83 N. C., 643, cited and approved).

CIVIL ACTION to recover land, tried before *Avery, Judge,* and a jury, at January Special Term, 1884, of the Superior Court of BERTIE county.

It was admitted on the trial that both the plaintiff and defendants claim title to the land in controversy, under the will of Augustus Holly. It was in evidence that Augustus Holly owned a very large body of contiguous land, composed of the " Ellenhouse," the " Willow Branch," the " Hermitage," the "John Gaskins place," (bought of John S. Gaskins in 1871), and the "Gus Gaskins place," (bought from the heir-at-law of Augustus Gaskins in January, 1872), the "Ashland," and the " Mount Gould place." The Willow Branch place was devised to the plaintiff, who contended that it embraced the land in dispute. It was admitted that Augustus Holly gave the land in controversy, in 1852, to Augustus Holly Gaskins, because he was

---

\*Chief Justice SMITH took no part in the decision of this case.

named after him, and it was in evidence that in 1872, hearing that one Byrum, who had married the daughter and only heir-at-law of Augustus H. Gaskins, was about to sell the land, the said Augustus purchased it back again, and stated, at the time of the purchase, that it was a part of his father's "Willow Branch" place, and that he intended to put it back where it came from, and that he intended that it should stay there.

The defendant, on the other hand, introduced evidence that Augustus Holly, about the time he bought back the "Gus Gaskins" place—the *locus in quo*—stated that he had done so because he needed it to go with the "John Gaskins" place, for the purpose of timber and wood; that the "John Gaskins" land was lacking in timber, and the "Gus Gaskins" land was adjoining it, and was well timbered; that after his marriage with the defendant, he stated the same thing; that he used the timber on it for no other purpose, and that he had the crops from the two places put together, and on one occasion stated that he did so because they were the same. No witness testified that the land in dispute was ever called the "Gaskins" place, but several of them testified that it was sometimes called the "Augustus Gaskins place."

In the argument before the jury, the defendants' counsel indulged in some comments upon the conduct of the plaintiff, which were alleged to be an abuse of privilege, but no objection was made to the remarks at the time, nor was the attention of the Court called to them when the case was submitted to the jury.

The Court charged the jury as follows: "The Court can aid you but little in this case, as the questions involved are chiefly those of fact, of which you are the sole judges. Both parties admit title in Augustus Holly, deceased. The plaintiff says, it was at the death of Augustus Holly, a part of the Willow Branch land, conveyed to him in the will under the devise to him of the "Willow Branch farm." The plaintiff must recover in ejectment, upon the strength of his own title; he must satisfy

7

you, by a preponderance of evidence, that the *locus in quo* was a part of the "Willow Branch" place—you need not inquire whether it was a part of the "Gaskins," the "Hermitage," or "Ashland" land.    Are you satisfied by a preponderance of evidence that the land, at the death of Augustus Holly, was a part of "Willow Branch" land?    If so, you must find the first issue "yes," and in answer to the second, name such sum as in your judgment is proper."

The following issues were submitted to the jury, to-wit:

1. Is the plaintiff the owner in fee-simple of the land described in the complaint and in controversy in this action?

2. What is the annual rental value of the land in controversy?

To the first issue the jury responded "no," and there was no response to the second issue.

There was no exception taken by the plaintiff to the ruling of the Court as to the competency of the testimony, nor was there any exception to the charge of the Court, when delivered. Two days after the verdict was rendered, counsel for the plaintiff asked to be allowed to except to the charge.    But no specific objection to the charge of the Court was then made.    No special instructions were asked on the trial, but after the trial and the rendition of the verdict, the counsel for plaintiff wished to except to the failure of the Court to stop the defendants' counsel when using remarks amounting to an abuse of privilege.    The Court declined to entertain the exceptions, and rendered judgment upon the verdict in favor of the defendants, from which the plaintiff appealed.

*Mr. R. B. Peebles*, for the plaintiff.
*Mr. W. D. Pruden*, for the defendants.

ASHE, J., (after stating the case).    There was but one point raised by the plaintiff on the bill of exceptions, and that was the refusal of the Court to entertain his exception to the failure of the Court to stop defendants' counsel in the remarks made by

him in the argument before the jury, which it was insisted was an " abuse of privilege."

The plaintiff's counsel contended it was the duty of the Court to stop the counsel, and its failure to do so was error, and entitles the plaintiff to a new trial. This may be so, if the counsel of the plaintiff had made his objection to the objectional remarks in apt time, but it was made too late. In *State* v. *Suggs*, 89 N. C., 527, it was held, that " a party complaining of the *abuse of privilege* by opposing counsel, must object at the time, so that the Court, when it comes to charge the jury, may correct the error, if one was committed, or the objection will be lost;" and it has been expressly held by this Court, that an objection that the Judge failed to stop counsel in improper remarks to the jury, comes too late when made after verdict. *State* v. *Sheets*, 89 N. C., 543, and *Horah* v. *Knox*, 87 N. C., 483.

There may be cases when it would be the duty of the Judge to stop the counsel, when his remarks and conduct are in violation of all the rules of the decorum and propriety that should be observed in the administration of justice, when nothing the Judge could say in his charge to the jury could rectify the wrong or efface the prejudice produced. Such was the case of the *State* v. *Noland*, 85 N. C., 576, but that was an extreme case, such as has never before occurred in the history of our judicial proceedings, and it is to be hoped will never again occur.

It was insisted in the argument before us in behalf of the defendant, that he was entitled to a new trial, because the Judge in his charge to the jury had failed to comply with the requirements of the Act of 1796, The Code, §413, which requires the Judge to state in a plain and concise manner, the evidence given in the case, and declare and explain the law arising therefrom; and to sustain his position he cited the cases of *State* v. *Jones*, 87 N. C., 547, and *State* v. *Rogers*, 93 N. C., 524, and other cases of like import might have been cited. But all of these cases, it will be seen, were cases where questions of law were involved, which might be declared the one way or the other, according as

the jury might find the facts to be, to which the principles of law were applicable.

The Act of 1796 is held to be declaratory of the common law, and that a Judge is not bound to *charge* the jury unless he chooses to do so, but if he does undertake to *charge*, then he must conform to the requirements of the Act. *State* v. *Morris*, 3 Hawks, 391. What is evidently meant by the *charge* to the jury, are the instructions given by the Judge, upon the law applicable to the facts of the case, but when there is no principle of law involved, he cannot be said to charge the jury in the sense of the statute.

But although a Judge is not bound to charge the jury, as Chief Justice TAYLOR said in Morris's case "no Judge would ever refuse to impart such assistance, when it is requested by a jury, nor would he withhold it in any case wherein the nature of the evidence, or the conduct of the cause, led him to believe that his aid would enable them to discharge their constitutional functions with more correctness or facility. But it must of necessity depend upon the circumstances of each case, whether the Judge believes that his aid would be of any efficacy; whether the case be not so plain and intelligible as to render his interference unnecessary, or the evidence so equally balanced as to make it unsafe."

The object of the act of 1796, was evidently intended to be applied to those cases where questions of law arise upon the facts of the case, for the Judge is required "to *declare and explain* the law arising upon them." *Cui bono* recapitulate the facts of a case, where there is no principle of law arising upon them, and it is a pure question of fact, lying entirely within the province of the jury?

When, in the trial of a cause like that of the *State* v. *Rogers*, *supra*, and others of that class, where the witnesses are numerous, the evidence complicated and conflicting, and there are different principles of law applicable to the different aspects of the case, as presented by the opposing evidence, it is most clearly

the duty of the Judge to comply with the requirements of the statute. To refuse to give any charge in such a case would be a gross dereliction of duty, and subject him to just public censure. But when the facts of a case are few and intelligible, and there is no question of law to be charged by the Court, we do not see the necessity of recapitulating the facts, nor do we think it is the duty of a Judge to do so, unless he is requested so to do. *State* v. *Reynolds*, 87 N. C., 544, and *State* v. *Grady*, 83 N. C., 643.

In the case under consideration, there was no question of law involved. It was a simple question whether the land in controversy was included in the devise of the "Willow Branch place." There was no request that the Judge should recapitulate the facts, and we are unable to see how his doing so could have aided the jury in coming to a determination upon the facts of the case. It was a question of preponderance of evidence, exclusively within the province of the jury ; and we are of the opinion, therefore, that the charge of the Judge is not obnoxious to the objection of the defendant.

The judgment of the Court below must be affirmed.

No error.                                                        Affirmed.