## SARAH CAWFIELD v. THE ASHEVILLE STREET RAILWAY COMPANY.

*Negligence—Contributory Negligence—Comments of Counsel—Burden of Proof—Street Cars.*

1. The matter of controlling comments of counsel in their speeches is ordinarily left to the sound discretion of the trial judge; and where there was evidence making the character of witnesses consistent with opprobrious epithets applied by counsel, there was no ground of complaint.

2. Where it is shown that the plaintiff was injured by the negligence of the defendant in starting his street car just as she was about to alight therefrom, he cannot exculpate himself by showing that she was so encumbered with baggage that she could not avail herself fully of his means provided for alighting, or that she waited two minutes before getting up from her seat, the car having gone beyond the place where she was to get off.

3. If the conductor might have seen her and prevented her fall, the company is liable even though she was also negligent as described in her manner of alighting from the car.

4. The burden of proof is on the defendant to show contributory negligence.

CLARK, J., and SHEPHERD, C. J., dissenting.

CIVIL ACTION, tried at December Term, 1891, of BUNCOMBE Superior Court, before *Merrimon, J.*

The plaintiff brought her action to recover damages for an injury caused by the sudden and negligent moving of the defendant's street car when she was in the act of alighting from it. The material facts are stated in the opinion.

The defendant appealed from the judgment rendered.

*Messrs. Julius C. Martin* and *H. B. Carter*, for plaintiff.
*Messrs. Thomas A. Jones, F. A. Sondley* and *T. F. Davidson*, for defendant.

AVERY, J.: In *Goodman* v. *Sapp*, 102 N. C., 483, the Court say that a number of cases cited and "numerous other authorities settle the general principle that the extent to which counsel may comment upon witnesses and parties must be left ordinarily to the sound discretion of the Judge who tries the case, and this Court will not review his discretion unless it is apparent that the impropriety of counsel was gross and calculated to prejudice the jury." The plaintiff had introduced depositions of a dozen witnesses examined at the place of her former residence in Kentucky, all of whom testified to her good character. Subsequently, the depositions of four witnesses living in the same locality were introduced for the defendant. One of these did not know her general character, another was offered to identify certain records of indictment against her and her husband when keeping a bar-room in Kentucky. But the witness whose deposition was first offered testified to a long discussion between a bevy of women had at his dinner-table in his presence, and without objection from him, in which the question was whether a baby to which the plaintiff had recently given birth resembled one Joel Jackson. The other witness testified in substance that when he was about twenty-two years old the plaintiff's character was bad for virtue and for the house she kept, but yet he worked with the husband, presumably at his own house—where she conducted the disreputable oyster saloon and bar-room, with a ball-room for rent to any who would pay the charges, of any color or condition, on the second floor. It was when counsel for the plaintiff applied the epithet "whore-house pimps" to these two witnesses that he was interrupted, and an appeal was made to the Court to stop him. Instead of ordering counsel to desist, the Judge told him to proceed, and did not allude to the remark in his charge to the jury, or make any comment upon it in their presence, though the counsel made no reflection on the witnesses after

he was interrupted. The Court was not asked to give any special instruction to the jury in response to the matter.

We think that, under all the circumstances, the comments made upon these two witnesses (and they could have been applied by the jury to no others, as they only testified directly that plaintiff's character was bad) did not constitute so gross an abuse of privilege as to take the question of the propriety of checking counsel or cautioning the jury out of the discretion of the trial judge. One of them had been the employee of the husband, according to his own account, at a house known by him to have a bad reputation; the other had drawn a picture of the racy dinner-table talk in his own household that invited, if it did not demand, criticism from a faithful attorney whose client's character was at stake, and was impeached only by witnesses who had exposed places so weak in their own harness. It was also within the sound discretion of the learned Judge who presided to reprove counsel and cause him to desist from further comment if he considered the language used so coarse as to be disrespectful to the Court. *Nissen* v. *Cramer*, 104 N. C., 579.

The defendant requested the Court, in each of two aspects, to instruct the jury that the plaintiff would be guilty of contributory negligence if their findings should correspond with these particular phases of evidence. The Court complied with both of these requests, coupled in each instance with the qualification that if, notwithstanding the negligence of the plaintiff, the defendant, by the exercise of ordinary care and watchfulness, could have prevented the injury, they would find that it was not attributable to want of care on her part. Conceding that she was negligent if she failed to avail herself of such appliances as were provided to support her in alighting from the car, or if she attempted to get off without asking assistance, and when her hands were so full of bundles that it was impossible for her to catch hold of any part of the car in order to avoid falling, still the car was an open

one with seats extending across it, so that when a passenger started to get off the conductor could at a glance take in the situation, and it was negligence on his part if he ordered or permitted the car to be moved when the plaintiff was in the act of alighting from the step at the end of the seat occupied by her. *Nance* v. *Railroad*, 94 N. C., 619; *Deans* v. *Railroad*, 107 N. C., 686; *Hinkle* v. *Railroad*, 109 N. C, 472; *Clark* v. *Railroad, Ibid*, 430.

We find that a very learned and careful text-writer has adopted the view (citing authority to sustain it) that where a street car is standing at a regular stopping place, it is negligence in the conductor to order the car to be moved when a passenger is alighting, though the passenger has made no special request to be allowed to get off at that point, because by looking before giving the signal or order he could comprehend the situation and avoid the danger. The structure of these cars is such as to always make it possible by proper precaution to see in a moment the position of the passengers, and whether anyone would be endangered by a sudden start

It is not material whether the conductor said "slack ahead," or gave two taps on the bell, as Waddell, the motorman, testified that he never moved without such signal, if in fact he communicated his wishes in some way to Waddell and the car was suddenly moved while the plaintiff was in the act of getting off the step. Sudderth, the conductor, also testified that his motorman never moved the car without a signal from him, that he had no recollection of seeing the plaintiff on the night when she said that she was injured, and that he heard of no injury to any passenger on that night. The plaintiff's testimony, corroborated in the main points by Charles Bailey, is to the effect that she was on the first step and in the act of placing her foot on the second, when the car suddenly moved, as far as she heard, without a signal, and she was thrown violently upon a brick pavement, sus-

taining in the fall the painful and permanent injuries which she described. The witness Bailey thought the conductor said " slack ahead," which the latter denies; but he says that the plaintiff was thrown with violence to the ground, was helped to her feet by him, and then complained of serious injuries. If she was thrown from the step by the sudden moving of the car when she was on the steps, and could have been seen by the conductor if he had looked before giving orders to move it, then he might, by proper watchfulness and care, have saved her harmless, notwithstanding her own negligence. If she was thrown from the step he might have seen and prevented it, and if he did not see her and prevent it, he was careless.

Neither the conductor nor the motorman saw the plaintiff fall at all, and therefore their testimony as to the circumstances was based upon the general rules that govern their conduct. If she was thrown from the step, as she and Bailey both swear, and was injured, as others testify that she was, the employees of the company had no actual knowledge of the occurrence. Their testimony is to the effect that it could not have happened, as stated by plaintiff, because if it had so occurred and they had observed their custom, they would have seen it, and that it could not have happened, as narrated, because the account of it, if true, involved a departure from rules to which they always adhered. We concur with his Honor in the opinion that the evidence as to whether the accident occurred at all, on the one side, was positive, and was entitled to greater weight than that adduced by the other. There was no error in reading, as he did, from *Henderson* v. *Crouse*, 7 Jones, 624, especially as the Court said in that case that "the amount of difference was a question for the jury," and the jury doubtless gave due consideration to the contradictory testimony offered by the defendant.

The burden was on the defendant to show contributory negligence on the part of the plaintiff, as set up in the

answer. The Judge submitted the question, raised by the amended answer, whether the plaintiff's negligence in getting out without availing herself of the supports within her reach and without asking assistance when her hands were full of bundles, was the direct cause of her injury, because these questions were fairly raised by the testimony on behalf of the plaintiff. We do not think that there was testimony in support of the defence relied on, that on the particular occasion referred to any notice was given to the plaintiff to remain in her seat, and if there was testimony that she remained in her seat two minutes after the car stopped, before moving, she having been carried beyond the point where the conductor had been directed and had agreed to put her out, we do not think that there was such evidence of negligence in stepping out late or in disregard of a notice to keep her seat, as made it the duty of the Court to submit to the jury, as requested, the questions whether she was negligent in remaining in her seat two minutes, or moving contrary to the warning of the conductor. The Judge was not bound to give instructions founded upon mere conjecture arising out of negative testimony in support of a plea which the law required the defendant to sustain by a preponderance of proof. The negative testimony was available for the purpose of contradiction; but it could not positively establish, or tend to prove, the circumstances attending the fall of the plaintiff, because, if it was true, she did not fall at all.

We have adverted to those exceptions which seem to have been pressed with any degree of confidence. The others, if it were necessary to discuss them in detail, are, we think, manifestly untenable. There is

No Error.

CLARK, J.—dissenting: The language used by counsel in characterizing the witnesses was not supported by anything in the evidence. It was calculated to destroy any credit which otherwise might have been given to their testimony. When appealed to by counsel, the Judge merely remarked, "Proceed," and neither then, nor in his charge, cautioned the jury. This might well mislead the jury into understanding the Judge to hold that the language was unobjectionable. It went to the jury with the impress of his assent, if not, indeed, of his approbation. When the evidence justifies it, counsel have the right to criticise in strong terms the testimony, character or bearing of witnesses within legal limits. But it is due to the witnesses themselves, as well as to the party who calls them, that they should not be assailed in abusive terms and gross epithets when the evidence does not justify the language used in regard to them. In such cases the Judge should *ex mero motu*, even if not appealed to, intervene to protect the witness and the party whose cause is damaged when the credit of his witness is thus shaken without evidence. It is true the party cannot assign as error the abuse of privilege by counsel unless he object at the time and give the Judge an opportunity to correct the matter. *State* v. *Suggs*, 89 N. C., 527; *Hudson* v. *Jordan*, 108 N. C., 10, and cases cited; Clark's Code (2d Ed.), 363. But here the matter was instantly brought to the attention of the Judge, who not only did not intervene, but told the counsel to proceed. Courts are held for the orderly, impartial investigation of controversies, and witnesses should feel that they are entitled there, as elsewhere, to respectful consideration. They are under the protection of the Court, which should not permit them to be unwarrantably assailed in language calculated to wound either their reputations or their feelings. While in such matters much is properly left to the discretion of the presiding Judge, the language here used was of such a nature that the refusal of the Judge to interfere, when appealed to, was calculated to

prejudice the defendant (*State* v. *Noland,* 85 N. C., 576; *Holly* v. *Holly,* 94 N. C , 96), and should entitle it to a new trial. *State* v. *Underwood,* 77 N. C., 502.   I do not concur as to other exceptions.   Especially the instruction, in effect, that there was no evidence of contributive negligence seems to me clearly erroneous.

SHEPHERD, C. J., concurs in the dissenting opinion.