STATE v. TYSON.

(Filed November 24, 1903.)

1. ARGUMENTS OF COUNSEL—*Exceptions and objections—Trial—Appeal.*

An exception to the remarks of counsel made during the argument must be taken before verdict.

2. EVIDENCE—*Sufficiency of Evidence—Exceptions and Objections—Appeal.*

Where there is no exception to the sufficiency of the evidence and the evidence is not set out in the record, the sufficiency thereof will not be considered on appeal.

MONTGOMERY and DOUGLAS, JJ., dissenting.

INDICTMENT against Simon Tyson, heard by Judge *G. S. Ferguson* and a jury, at January Term, 1903, of the Supe-

rior Court of PITT County. From a verdict of guilty and judgment thereon the defendant appealed.

*Robert D. Gilmer, Attorney-General,* for the State.
*Skinner & Whedbee,* for the defendant.

WALKER, J. The defendant was indicted for burning a tobacco barn and pack-house, and having been convicted appealed to this Court. The only exception relates to certain remarks of the Solicitor in his address to the jury. It was in evidence that the defendant is a colored man and had been a slave of a Mr. Tyson. He was raised on the plantation where the crime was alleged to have been committed and made his home there a greater part of his life. The prosecutor had purchased the plantation and the defendant had been his tenant. The barn which was burned was within forty or fifty yards of the Tyson dwelling, where the prosecutor lived. It was further in evidence that the defendant received a pension as a Union soldier. It is stated in the case that "Counsel for the defendant in addressing the jury spoke at some length and with considerable feeling of the attachment of the defendant to his old master and the members of his family, and pictured with eloquence the sacredness of the surroundings, and argued that the defendant could not and would not in sight of the old dwelling set fire to the barn." The solicitor in reply said: "It did not appear that he (the defendant) was strongly attached to his old master and his family, as it appeared that when the test came he had a gun in his hand ready to shoot down his young master, and is now drawing a pension for it."

No exception was taken to the remarks of the Solicitor at the time, nor were they called to the attention of the Judge until after verdict.

We think that this exception came too late, even if the language of the solicitor in argument was, under the facts and

circumstances of the case, such an abuse of his privilege as to entitle the defendant to a new trial, if exception had been taken at the proper time. The evidence upon which the remarks of the defendant's counsel and the solicitor were based was altogether irrelevant to the issue joined between the State and the defendant, and if it had been objected to in apt time it should, and no doubt would, have been excluded by the Court, but it seems that the defendant's counsel first introduced irrelevant testimony for the purpose of using it as a foundation of his appeal to the jury that the defendant's supposed attachment to his former master and to the old homestead would deter him from committing the crime with which he was charged, and without any objection from the defendant the solicitor was permitted to prove that the defendant was drawing a pension as a Union soldier, and to argue from that fact that he had no such attachment, as he had taken up arms against his master and was drawing a pension for it. It appears, therefore, that the discussion of this evidence proceeded with the consent or acquiescence of the defendant, and that what was said by the solicitor was somewhat provoked if not justified by the previous remarks of the defendant's counsel. The remarks on both sides were of such a character that the presiding Judge could, with perfect propriety and in the exercise of his discretion, have interfered and stopped the discussion, but the defendant is not in a position to complain of what was done or of what the Judge failed to do, as he did not except when he had the right and opportunity to do so, and he did not request the Judge in his charge to call the matter to the attention of the jury, so that any injurious impression made upon them by the remarks of the solicitor might be removed.

This Court has many times decided that exception to the remarks of counsel during the argument must taken before

verdict, and we are not disposed to reverse or even to modify this just and salutary rule of practice.

In *State v. Suggs,* 89 N. C., 527, *Ashe, J.,* speaking for the Court says: "The objection to the remarks was not made until the next day after the verdict was rendered, upon a motion for a new trial. It came too late. It was not made in apt time, and for that reason cannot be entertained, as has been frequently decided by this Court. The party complaining of the 'abuse of privilege' by the opposing counsel should object at the time the objectionable language is used, so that the Court when it comes to charge the jury may correct the error, if one was committed, and put the matter right in the minds of the jury. 'A party cannot be allowed thus to speculate upon his chances for a verdict, and then complain because counsel were not arrested in their comments upon the case. Such exceptions, like those to the admission of incompetent evidence, must be made in apt time, or else be lost.' "

In *State v. Brown,* 100 N. C., 519, the Court, through *Smith, C. J.* (referring to remarks of the Judge alleged to have been prejudicial to the defendant), said: "It is a sufficient answer to the objection that it was not made until after the rendition of the verdict, and repeated adjudications have settled the rule that such exceptions must be taken in apt time and not after a disappointing issue of the trial."

In *State v. Powell,* 106 N. C., 635, the rule is reiterated by the Court in the following language: "The exception to the remarks of the solicitor in his address to the jury is also untenable. The remarks were not objected to, nor was the Court requested to give any instruction in regard to them."

In *State v. Lewis,* 93 N. C., 582, *Ashe, J.,* for the Court, states the rule in language peculiarly appropriate to this case, as follows: "The defendant can take no advantage from his exception taken to the alleged abuse of privilege in the remarks made by the solicitor in his argument before the jury.

For assuming them to be improper, there is no error to be imputed to the Judge in not stopping the solicitor, unless they were objected to, or the attention of the Judge called to them at the time. This does not appear to have been done in this case, and the objection was lost"; and again, in *State v. Speaks,* 94 N. C., 876, he says: "The last exception taken by the prisoner, to the abuse of privilege by the solicitor in his argument to the jury, was only taken after verdict, and it has been repeatedly decided by this Court that such an exception taken after verdict is too late and cannot be sustained."

In *Knight v. Houghtalling,* 85 N. C., 17, cited and approved in *Horah v. Knox,* 87 N. C., 487, *Ruffin, J.,* for the Court says: "It does not appear to us that they (counsel for the plaintiff) either abused the privilege reserved or improperly resorted to any other in connection with the letter in question. But if they had done so we should still be constrained to hold that the plaintiff's objection comes too late."

These extracts from the cases have been made for the purpose of showing that by a long and unbroken line of judicial decisions the rule requiring exception to improper remarks of counsel to be made in apt time and at least before verdict, has been well established. See also *State v. Underwood,* 77 N. C., 502; *Holly v. Holly,* 94 N. C., 99; *State v. Tuton,* 131 N. C., 701; *Goodman v. Sapp,* 102 N. C., 477; *Cawfield v. Railroad,* 111 N. C., 597; *Byrd v. Hudson,* 113 N. C., 212; *Pearson v. Crawford,* 116 N. C., 756; *State v. Surles,* 117 N. C., 720; *State v. Craine,* 120 N. C., 601; *Perry v. Railroad,* 128 N. C., 471. The rule is also clearly recognized in *McLamb v. Railroad,* 122 N. C., 862, and in *Hopkins v. Hopkins,* 132 N. C., 27.

The defendant's counsel in this Court contended, though, than when the abuse of the solicitor's privilege in debate is gross and manifestly calculated to prejudice the defendant, the Judge should interfere and stop counsel and so caution the

jury as to prevent any injurious consequences to the defendant, and his failure to do so even without objection by the defendant was error, and for this position he relied on *State v. Smith,* 75 N. C., 306, and *State v. Noland,* 85 N. C., 576. In *State v. Noland* the defendant's counsel did except in apt time and there was no response from the Judge, but the State's counsel was permitted to continue his abuse of the jurors who were then in the box. This Court held that the error of the Judge in not interfering instantly in such a case could not be cured in the charge. The Judge failed to act when he was called upon to act, and for this reason the case is not in point. It also appears by clear inference from the statement of the facts in *State v. Smith* that exception to the objectionable remarks was taken at the proper time, but if the cases cited by the defendant's counsel sustained his position we could not follow them and disregard, if not overrule, the many and more recent cases by which a different rule is established.

The question now under consideration was before this Court in *Perry v. Railroad,* 128 N. C., 471, in which it appeared that the counsel for the plaintiff, in his address to the jury, related facts within his personal knowledge, of which there was no evidence in the case, and made those facts the basis of an attack upon the defendant's witnesses, in which he strongly insinuated that they had been guilty of perjury. "These facts" (says *Douglas, J.,* speaking for the Court) "were essentially damaging in their nature, and, coming from so high a source, were capable of producing most dangerous prejudice." In passing upon the exception of the defendant to the said remarks of counsel, the question arose whether objection to them had been sufficiently made and in apt time, and in this connection the Court says: "The exception does not appear to have been taken in a very regular manner; but as his Honor has allowed it, evidently for the purpose of giving the defendant the fullest opportunity of appeal, we will examine it in

the spirit in which it was allowed." It is to be fairly deduced from the case of *Perry v. Railroad, supra,* that the Court will not grant a new trial because of abusive language of counsel in argument, even though it can be clearly seen that a party has been prejudiced, unless exception is taken in apt time or at least before the case is given to the jury. There is no more reason for awarding a new trial when counsel indulge in the use of abusive language or improper comments calculated to prejudice one of the parties, unless exception is taken at the proper time, than there would be for permitting a party to except after verdict to evidence which would have been excluded if objection had been made in apt time. Evidence thus admitted, without objection, may be just as damaging to the party in its influence upon the jury as the improper remarks of counsel, and sometimes more so, but no rule is better settled than the one under which an objection to evidence is deemed to be waived if brought forward for the first time after verdict.

We conclude, therefore, that the conduct of a trial in the Court below, including the argument of counsel, must be left largely to the control and direction of the presiding Judge, who, to be sure, should be careful to see that nothing is said or done which would be calculated unduly to prejudice any party in the prosecution or defense of his case, and when counsel grossly abuse their privilege at any time in the course of the trial the presiding Judge should interfere at once, when objection is made at the time, and correct the abuse. If no objection is made, while it is still proper for the Judge to interfere in order to preserve the due and orderly administration of justice and to prevent prejudice and to secure a fair and impartial trial of the facts, it is not his duty to do so in the sense that his failure to act at the time or to caution the jury in his charge will entitle the party who alleges that he has been injured to a new trial. Before that result can follow

the Judge's inaction, objection must be entered at least before verdict. *Knight v. Houghtalling, supra.* A party will not be permitted to treat with indifference anything said or done during the trial that may injuriously affect his interests, thus taking the chance of a favorable verdict, and afterwards, when he has lost, assert for the first time that he has been prejudiced by what occurred. His silence will be taken as a tacit admission that at the time he thought he was suffering no harm, but was perhaps gaining an advantage, and consequently it will be regarded as a waiver of his right afterwards to object. Having been silent when he should have spoken, we will not permit him to speak when by every consideration of fairness he should be silent. We will not give him two chances. The law helps those who are vigilant—not those who sleep upon their rights. He who would save his rights must be prompt in asserting them.

What was said by this Court in *Burton v. Railroad,* 84 N. C., 192, related to the charge of the Court to the jury, and in such a case exception can always be taken after verdict. If the Court lays down the law improperly the matter can be reviewed in this Court if there is an assignment of the error even in the case on appeal. The remarks of the Court in that case had special reference to an objection made to evidence which was competent for one purpose but not for another. There was a general objection to the evidence, but the Court failed to confine it to its proper and legitimate purpose. In this connection the Court said, at page 195: "It is error to admit evidence competent for one purpose only, to be considered and acted on for another and improper purpose. The error lies not only in the omission to make the necessary explanation, but in giving a direction calculated to mislead, and which may have misled, the jury in rendering their verdict. This is so connected with the facts allowed to be proved

STATE *v.* TYSON.

as to extend the exception to the reception of the testimony to the disposition afterwards made of it."

It is suggested that the evidence was not sufficient to justify a conviction of the defendant. There is no point made in the record as to whether there was any evidence, or any sufficient in law, upon which to base the verdict. Whether there was or not is a question not now before us. The record does not contain any of the evidence, because no question was made in regard to it, and the fact that there is no statement of the evidence in the record is tantamount to an admission that there was evidence sufficient to sustain the verdict. In this Court we are confined to the record and have no right to receive information of any facts that do not appear in it, much less to consider or act upon any such information. "The record importeth verity," and we are enjoined by the law to look to the record alone and upon it to found our judgments. Any other rule would render insecure the important rights upon which we have to pass.

It is needless to discuss the question whether, if seasonable objection had been made by the defendant in this case, the remarks of the solicitor, in view of the particular circumstances under which they were made, were of such a character as to entitle the defendant to another trial. *State v. Bryan,* 89 N. C., 534.

The defendant's objection to the formation of the grand jury was, we think, properly abandoned in this Court. We find no error in the rulings of the Court or in the record, and it will be so certified.

No error.

MONTGOMERY, J., *dissenting.* The question raised by the exception in the defendant's appeal is one of practice, pure and simple, for from my point of view the remarks of the solicitor constituted a *gross* abuse of privilege, to the mani-

fest prejudice of the defendant. Whether or not the language was an abuse of privilege and prejudicial to the defendant is not decided in the opinion of the Court. The opinion stops at the point where it is declared that the objection was made too late—after the trial. It is the general rule, no doubt, that objection to the course of counsel during the trial must be made at the time, and before verdict, and many of the authorities cited by the Court to sustain that view are fully in point. But to my mind there must be an exception to the rule, or the ends of justice be entirely perverted in occasional instances. I think the exception to the rule is that where the abuse of privilege is *gross* and the prejudice to the opposite party manifest it is the *duty* of the Court then and there to stop counsel, *ex mero motu.* This view of an exception to the general rule seems to me to be sustained by the clear precedents of this Court. In *Jenkins v. Ore Co.,* 65 N. C., 563, *Judge Reade,* for the Court, said: "Zealous advocates are apt to run into improprieties; and it must generally be left to the discretion of the Judge whether it best comports with decency and order to correct the error at the time by stopping or reproving the the counsel or wait until he can set the matter right in his charge. It must often happen that the Judge cannot anticipate that the counsel is going to say anything improper, and it may be said before the Judge can prevent it, as in this case. * * * And the question was whether he was obliged to stop the counsel then and there and reprove him, and tell the jury that they must not consider that, or whether he would wait and correct that and all other errors when he came to charge the jury. Ordinarily this must be left to the discretion of the Judge. But still it may be laid down as law and not merely discretionary, that where the counsel *grossly* abuses his privilege, to the manifest prejudice of the opposite party, it is the *duty* of the Judge to stop him then and there, ·

STATE *v.* TYSON.

and if he fails to do so and the impropriety is gross, it is good ground for a new trial."

In *State v. Williams,* 65 N. C., 505, the same Judge said: "It (power to stop counsel in the abuse of privilege) is a power which is usually exercised sparingly, but nevertheless it is a power which the Court possesses and which ought to be promptly and firmly exercised where the abuse is gross, as was the case here." It is proper for me to add that in the two cases above referred to objection was made at the time the abuse of privilege was alleged, but to my mind the reasoning there is conclusive that whether or not the objection was made, it is nevetheless the *duty* of the Judge to stop counsel then and there when the abuse of privilege is *gross* and to the manifest injury of the opposite party. However that may be, in the cases of *State v. Smith,* 75 N. C., 306, and *State v. Noland,* 85 N. C., 576, it does not appear in the record that objection was made during the trial to the language of counsel. In fact in the last mentioned case it appears that there was no objection as I read the case. The trial there extended through several days, and on the third day the counself assigned for the State charged two jurors with having, through perjury and corruption, gotten upon the jury for the purpose of acquitting the accused, read various affidavits to establish the charge and made violent speeches in the hearing of the whole jury. The Court declined the motion of the counsel to make a mistrial by withdrawing a juror, on the ground that the affidavits were hearsay in their nature. On the next day counsel renewed the motion for a new trial, amended so as to charge that a certain one of the jurors had not only formed and expressed the opinion that the prisoners were not guilty, but that he had used his best efforts to influence others to adopt the same opinion. In arguing the motion the second time the case states that the counsel for the prosecution were more impassioned in their utterances and

abusive of the jury than on the day previous. The contemptu-
ous treatment of a certain one of the jurors by counsel for the
State in his closing address to the jury was as marked as it is
possible to conceive of as having occurred in a court of justice.
It does not appear from the record in that case that any objec-
tion was made to the course of counsel for the prosecution on
the fourth day of the trial—the day on which the particular
juryman was so grossly outraged. *Judge Ruffin,* who deliv-
ered the opinion of the Court in that case, said: "It is not
possible that the law can give its sanction to a proceeding con-
ducted with so little regard to regularity and decorum, as was
the trial of the prisoner in this case. Neither would it permit
a verdict to stand and the sentence under it to be executed,
which has been rendered under such stress of force and dicta-
tion as was brought to bear upon two of the twelve jurors
employed, and especially upon the juror James. To secure
for the administration of the law that general respect and con-
fidence which it is the highest public interest it should enjoy,
it is absolutely essential that the business of the Court should
be conducted with becoming gravity and dignity, that their
judgments should be seen to be temperately considered and
impartially delivered; and above all, that the verdict of the
juries concerned should be known to be the result of serious
convictions and free deliberations. Appreciating this great
necessity, extending alike to the public interests and the indi-
vidual security, our Courts have been constant in the purpose
to protect the juries of the country from the approach of
every circumstance which might tend unnecessarily to excite
their minds or influence their prejudices." The Court, after
further reciting the treatment which the juror James had re-
ceived from the counsel, further said: "After its commission
under the circumstances it admitted of no cure by anything
that would be said in the charge. The subjection of the mind
of the juror, his loss of self-respect and his apprehension of

STATE *v.* TYSON.

responsibility to public opinion could not be believed." As we have said, it does not appear from the record in the case of *State v. Smith, supra,* that objection was made to the course of counsel during the trial, and in that case an extract is made from the decision in the case of *Jenkins v. Ore Co., supra,* in these words: "When the counsel grossly abuses his privilege to the manifest prejudice of the opposite party it is the *duty* of the Judge to stop him, there and then. If he fails to do so and the impropriety is gross it is good ground for a new trial."

If I should be in error in my analyses of those cases it is yet true that the question decided in this case is one of practice, and that being so it can be modified or altered by this Court without injury to any vested right of property, and at the same time protection of personal liberty; and this case demonstrates, in my opinion, the necessity of a change in our practice on this question, if my view is not now that of the law. Under all the circumstances of time, place and conditions the defendant's case could not have been impartially considered by the jury after the solicitor's speech. As far as the personal and official influence of the solicitor extended, the helpless old man was placed before the jury in the light of a slave, who had not only rebelled against the lawful authority of his owner, but had taken arms in his hands and joined the common enemy to shoot down a member of his old master's household, and who was for that act the recipient of a reward in the way of a pension from the conqueror. The solicitor must have known when he introduced the evidence that the defendant had been a Union soldier, and then was drawing a pension, that it was totally incompetent on an indictment for crime against the State, and that it was as damaging evidence under all the conditions of time and place as could have possibly been given in. That its use before the jury had a strong influence in exciting their prejudices can-

not be doubted, it seems to me.  In my opinion it was one of those cases where, under the circumstances, the injury done could not have been cured by anything that could have been said by the Court.  And to conclude, if I am in error in my view as to what is the true rule of practice on the point raised on this appeal, and the true rule is that stated in the opinion of the Court, I ask the question put in *Burton v. Railroad,* 84 N. C., 192 : "Is the Court, in the observance of a strict rule of practice, compelled to shut its eyes to the injustice done the prisoner and affirm a judgment which wrongfully takes his life?"   The sentence in the case before us can well be regarded as a death sentence, for the defendant is seventy-six years old, and the judgment of the Court is a term of eight years in the State Prison.  I cannot hesitate to break the rule of practice, if the true rule is stated in the opinion of the Court, which entails such a perversion of justice.   I think there should be a new trial.

DOUGLAS, J., *dissenting*.  I deeply regret being compelled to dissent in this case, and especially upon the grounds that I am forced to assign; but I would feel unworthy of the blood I bear and the associations of my early manhood, were I to admit that anywhere, or at any time, the fact that a man was a Union soldier is any reason why he should be convicted of felony.   The essential facts of the record are thus succinctly stated in the opinion of the Court: "The defendant was indicted for burning a tobacco barn and pack-house, and having been convicted, appealed to this Court.   The only exception relates to certain remarks of the solicitor in his address to the jury.   It was in evidence that the defendant is a colored man and had been a slave of a Mr. Tyson.  He was raised on the plantation where the crime was alleged to have been committed, and made his home there a greater part of his life.  The prosecutor had purchased the plantation and the

144—45

defendant had been his tenant. The barn which was burned was within forty or fifty yards of the Tyson dwelling, where the prosecutor lived. It was further in evidence that the defendant received a pension as a Union soldier. It was stated in the case that 'counsel for the defendant in addressing the jury spoke at some length and with considerable feeling of the attachment of the defendant to his old master and the members of his family, and pictured with eloquence the sacredness of the surroundings, and argued that the defendant could not and would not in sight of the old dwelling set fire to the barn.' The solicitor, in reply, said: 'It did not appear that he (the defendant) was strongly attached to his old master and his family, as it appeared that when the test came he had a gun in his hand ready to shoot down his young master, and is now drawing a pension for it.' "

It was admitted upon the argument that the statement that the defendant "had a gun in his hand ready to shoot down his young master" was a mere figure of speech, and simply meant that he was in the Union army during the late Civil War. There is not a particle of evidence that he ever came near his young master during the war, or that he ever tried or intended to do him the slightest harm. The entire gravamen of the allegation was that he is on the pension roll of the Republic.

This is not a case where there is no exception, but it is said that the exception was not taken in apt time, that is, when the words were uttered. It is true that is the general rule, but like all rules it must admit of necessary exceptions. At best it is a technical rule of procedure founded in convenience and not in natural justice.

As in cases of libel, there are words which are actionable *per se* independent of malice, so in the trial of causes there are methods of argument which are objectionable *per se* regardless of exception. Among such are any words that reflect

upon the integrity of the government or the honor of the flag. I can see how the words might have been uttered by the brilliant young solicitor in the heat of debate, and overlooked by the upright and learned Judge; but can we, sitting here in calm review, give them the sanction of our approval in the face of the exception and after exhaustive argument? Admitting that the exception was not taken in apt time, can we permit a mere technical rule of practice to lie in cold obstruction across the path of justice and of right?

I am not alone in this view in placing justice and humanity above the technical rules of practice. I will cite but one case, *Burton v. Railroad,* 84 N. C., 192, where *Chief Justice Smith*, speaking for a unanimous Court, says on page 196: "We are not prepared to concede the proposition so broadly and strenuously asserted in the argument." * * * "That no error, however palpable and hurtful, committed in the administration of the law by the action of the Judge, are capable of correction unless specially pointed out in an exception on the record." "The rule it self is not without qualification, and enforced, would, in some cases, lead to disastrous consequences. For the purpose of illustration, let us suppose a case on trial, the indisputed facts of which make the prisoner's offense to be manslaughter, and yet, under the erroneous charge of the Judge the jury find a verdict of murder, and all this fully appears on the record. Because of the inadvertence of counsel, the misapprehension of the Judge as to the law and the consequent misdirection given to the jury are not specially pointed out in an exception, and yet the fatal error is apparent to the Court. Is the Court, in the observance of a strict rule of practice, compelled to shut its eyes to the injustice done the prisoner and affirm a judgment which wrongfully takes his life? In such a case would not the Court interfere and correct a manifest error, although overlooked at the trial, and, therefore, not the subject of a distinct exception?"

It is true the defendant is not sentenced to death, but he is sentenced to eight years in the penitentiary, which is equivalent to a life-sentence to a man of seventy-two years of age.

There is in the record no direct evidence whatever of the defendant's guilt, but I am told we must presume there was such evidence. If I am compelled to go outside the record to presume anything, I shall ascertain the truth as far as I can. I am told that practically the only evidence against him was an alleged confession claimed to have been made to a professional negro detective who had given him whiskey to elicit a confession.

It is natural that his counsel should argue to the jury that they should believe the oath of this old man rather than that of an imported negro detective; that standing on the brink of the grave at the threshold of his boyhood's home, with all the sacred memories of the past coming back as they will to those the lengthening shadows of whose lives have almost reached the horizon's edge, he would not commit a useless and wanton crime. On the other hand, the State insisted that the detective's story should be believed in preference to that of the defendant because, forsooth, the latter had been a Union soldier, whose name was on the pension roll of our country. Under such circumstances, can any one suppose that such an argument was either proper or harmless?

Of course men who have been soldiers may commit infamous crimes, but not because they have been soldiers.

In itself the pension roll is a roll of honor, on which any one, whether Union or Confederate, may well be proud to have his name enrolled. No one can have a higher admiration than I for the true Confederate soldier, who, believing that he owed supreme allegiance to his State, freely offered his life in its defense. No one would more readily join in keeping fresh the memory of his heroic deeds, or in extending the generous aid that he may justly ask from a grateful State,

but equal justice must be done to those who followed the flag of our reunited land.

The opinion of the Court says: "In this Court we are confined to the record and have no right to receive information of any facts that do not appear in it, much less to consider or act upon any such information." This is undoubtedly the correct rule governing the opinion of the Court in deciding the case, but has not been followed in dissenting opinions which decide no rights and for which the author alone is responsible.