STATE OF NORTH CAROLINA v. BOBBY HINES, JESSE LEE WALSTON AND VERNON LEROY BROWN

No. 15

(Filed 31 January 1975)

**1. Rape § 1— definition of rape — nature of force required**

Rape is the carnal knowledge of a female person by force and against her will, but the force necessary to constitute rape need not be physical force; rather, fear, fright, or coercion may take the place of force.

**2. Rape § 5— sufficiency of evidence for submission to jury**

The trial court in a prosecution for rape properly submitted the case to the jury where the prosecuting witness testified that she did not consent to any one of the defendants having sexual relations with her, that each of the acts of intercourse was against her will, that defendants' strength was greater than hers, and that she feared for her life.

**3. Criminal Law § 102— solicitor's statement on voir dire — prejudicial error — new trial**

In a capital case an improper statement made by a solicitor in the presence of prospective jurors during their *voir dire* examination may well be as prejudicial as a similar statement made by him during argument to the jury; therefore, defendants in this rape case are entitled to a new trial where the solicitor on *voir dire* told a juror, who expressed misgivings regarding the death penalty, "and to ease your feeling, I might say to you that no one has been put to death in North Carolina since 1961."

Justices COPELAND and EXUM took no part in the consideration or decision of this case.

APPEAL by defendants from *Webb, J.,* 3 December 1973 Special Session of EDGECOMBE Superior Court.

Each defendant was charged by an indictment, proper in form, with the rape of Deborah Jo Tostoe. The cases were consolidated for trial over defendants' objections, and each defendant entered a plea of not guilty.

The State's evidence, in summary, tended to show the following facts:

Deborah Jo Tostoe, a twenty-two-year-old white woman, testified that on the night of 4 August 1973 she had been out with her boyfriend and another couple. While at the home of the mother of her female companion, she became nauseated from drinking alcoholic beverages. She told her boyfriend, Ricky Sanderson, that she wanted to go home, but he refused to take her home. She was "hurt" by this refusal and started walking home alone about midnight. She was crying as she walked barefooted along the U. S. Highway 64 Bypass in Tarboro. While on the bypass, she saw a car pass and heard someone shout something to her from the car. The car turned around, came alongside her, and stopped. Someone in the car offered her a ride home. She accepted the offer and voluntarily entered the automobile. The automobile was a two-door Chevelle with bucket seats, and the front seat had to be pulled forward in order for a person to enter the back seat. She entered the back seat, where defendant Hines was sitting and for the first time realized that all of the occupants of the car were young black males. She could not get out of the car, and she relied on their promise to take her home. The car proceeded toward her home but passed through the intersection where it should have turned in order to go to her residence. She told defendants that

State v. Hines

they had missed the turn, but they completely ignored her. She failed in her attempt to locate the door handle or window handle, and at that time she became frightened.

Defendant Hines then grabbed prosecutrix's breasts, which action "totally shocked" her. She was initially successful in removing his hands, but, as the car continued on its way, Hines pushed her down in the back seat and proceeded to remove her clothing. She tried to push him away, but, realizing his superior strength, she concluded that resistance would be futile. In previous discussions with her mother and sister, prosecutrix had agreed that, in such a situation, it would be better to submit rather than to resist and risk serious injury.

Prosecutrix stated that she cried during this entire episode but that, despite her tears and protestations, defendant Hines proceeded to have sexual intercourse with her. By this time the car had stopped on a deserted stretch of rural road. There the other two defendants had sexual intercourse with her against her will. As the car left the scene, defendant Hines again had intercourse with her. She testified:

> "I did not consent to the defendant having relations with me. I did not give any one of them permission to have sexual relations with me. It definitely was done against my will.
>
>               *    *    *
>
> "Their strength was much greater than mine and I was afraid that my life could have been taken or hurt in some way."

The car proceeded to the Hollywood Drive-In where she left the automobile and received aid from bystanders.

In corroboration, the State offered witnesses who testified that they heard the prosecuting witness state that she had been raped by three black men. These witnesses also testified that in their opinion she was not intoxicated but that she was very upset and in a hysterical condition.

Dr. John Whaley testified that he examined Deborah Jo Tostoe at the emergency room of the local hospital during the early morning hours of 5 August 1973, that he found sperm in her vagina, but that he observed no bruises, contusions, or cuts on her body. He testified that there was evidence of sexual intercourse within twelve to fourteen hours prior to his examina-

tion. He further testified that the physical evidence showed no more than he would have expected to find upon examining a married woman who had engaged in recent sexual intercourse with her husband.

The State also offered witnesses whose testimony tended to show that the prosecuting witness bore a good reputation in the community.

Defendants offered evidence which, in summary, tended to show that all three defendants were in the Chevelle automobile and that they stopped and picked up the prosecutrix. Each defendant admitted that he had sexual intercourse with Deborah Jo Tostoe; however, each defendant emphatically testified that each act of intercourse was consummated with her consent. The defendants' evidence further tended to show that the prosecuting witness voluntarily got into the car with them and shortly thereafter began to address them as "Sugar." She not only consented to several acts of intercourse but in fact encouraged each of them to consummate each act of intercourse. The defendants' evidence also tended to show that the prosecuting witness was under the influence of alcohol.

Defendants offered several witnesses who testified as to their good character.

The jury returned a verdict of guilty of rape as to each defendant. Each defendant appealed from a judgment sentencing him to death by asphyxiation.

*Attorney General Robert Morgan by Assistant Attorney General James E. Magner, Jr., for the State.*

*Grover Prevatte Hopkins of the North Carolina Bar; Morris Dees, Jr., and Charles F. Abernathy of the Alabama Bar for Defendants.*

BRANCH, Justice.

Defendants assign as error the failure of the trial judge to grant their motions for nonsuit.

[1] Rape is the carnal knowledge of a female person by force and against her will. The force necessary to constitute rape need not be physical force. Fear, fright, or coercion may take the place of force. *State v. Flippin,* 280 N.C. 682, 186 S.E. 2d 917; *State v. Primes,* 275 N.C. 61, 165 S.E. 2d 225; *State v.*

*Carter,* 265 N.C. 626, 144 S.E. 2d 826; *State v. Thompson,* 227 N.C. 19, 40 S.E. 2d 620.

In passing upon a motion for judgment as of nonsuit, the trial judge must consider all the evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn from the evidence and considering so much of defendant's evidence as may be favorable to the State. In considering the motion, the Court is not concerned with the weight of the testimony, or with its truth or falsity, but only with the question of whether there is sufficient evidence for the jury to find that the offense charged has been committed and that defendant committed it. *State v. McNeil,* 280 N.C. 159, 185 S.E. 2d 156; *State v. Murphy,* 280 N.C. 1, 184 S.E. 2d 845; *State v. Cooke,* 278 N.C. 288, 179 S.E. 2d 365; *State v. Primes, supra; State v. Cutler,* 271 N.C. 379, 156 S.E. 2d 679.

[2]  The only question of fact presented for determination by the jury was whether defendants obtained carnal knowledge of the prosecuting witness by force and against her will or whether the acts were done with her consent. The prosecuting witness testified that she did not consent to any one of the defendants having sexual relations with her and that each of the acts of intercourse was against her will. She stated that their strength was greater than hers and that she feared for her life. We note that in the oral argument before this Court, counsel for defendants conceded that the evidence was sufficient to require submission of the case to the jury.

We hold that there was substantial evidence of all material elements of the crime of rape as to each defendant and that the trial judge properly overruled the motions for nonsuit.

Appellants, by their Assignment of Error Number 15, contend that certain statements made by the solicitor during the *voir dire* examination of prospective jurors were so prejudicial as to entitle them to a new trial.

After three jurors had been seated, the following exchange occurred:

"JUROR GRACE WHITEHURST: I am not comfortable with capital punishment. However, were I to serve on this jury, if I felt that the defendants were guilty, I would have to vote that way, but I would feel that I had endangered myself.

"MR. HOLDFORD: Well, everybody feels that way but this is the punishment that is provided at this point. And to ease your feelings, I might say to you that one one has been put to death in North Carolina since 1961.

OBJECTION: SUSTAINED.

EXCEPTION No. 11."

We do not find that this Court has ruled upon the effect of similar statements by the solicitor during *voir dire* examinations of prospective jurors in a capital case; however, we find guidance in our cases in which the solicitors have made like remarks during jury arguments.

In *State v. Little,* 228 N.C. 417, 45 S.E. 2d 542, the solicitor stated in his closing argument that "in all first degree cases where men were convicted there would be an appeal to the Supreme Court, and that in this case, if this defendant were convicted there would be an appeal to the Supreme Court, and that in the event the decision of the lower court should be affirmed, there would be an appeal to the Governor to commute the sentence of the prisoner; and that not more than sixty per cent of prisoners convicted of capital offenses were ever executed." Even though counsel for defendant subsequently told the trial judge that he did not desire an instruction to disregard this improper statement, this Court held such statement to be prejudicial error. Justice Winborne (later Chief Justice), writing for the Court, stated:

"[I]t is manifest that the statements of facts that if the defendant be convicted there would be an appeal to the Supreme Court, and that in the event the decision of the lower court should be affirmed there would be an appeal to the Governor to commute the sentence of the prisoner, and that not more than sixty per cent of prisoners convicted of capital offenses were ever executed, are matters not included in the evidence. Nor are they justified as being in answer to argument of counsel for defendant. They are calculated to unduly prejudice the defendant in the defense of the charge against him. 'Who can say,' as counsel for defendant ask, 'to what extent the jury was influenced by the solicitor's statement that the prisoner, in the event his appeal did not obtain a new trial, that he still had a forty per cent chance to have his sentence commuted?' We hold

the remarks to be error,—and such error as called for correction by the presiding judge. [Citations omitted.]"

In *State v. Hawley,* 229 N.C. 167, 48 S.E. 2d 35, the defendant was convicted of first-degree murder and sentenced to death. During the trial of this case, the solicitor, in his final argument to the jury, in part, argued:

"In North Carolina there are four capital felonies, that is felonies for which the punishment is death. Murder in the first degree is one of these felonies. The defendant is being tried under a bill of indictment which charges murder in the first degree, and the State is asking for a conviction. I know that juries as a rule are reluctant to find defendants guilty of an offense for which the punishment is death. You, gentlemen of the jury, are but a small cog in the final determination and conclusion of this case. If you find the defendant guilty as charged, and the defendant is sentenced by the Presiding Judge to be executed in the manner which the statute prescribes, that does not mean that the defendant will be put to death. Before the defendant will be put to death the Supreme Court will review his trial, whether or not the defendant appeals, and the Supreme Court will seek to find some error or errors entitling the defendant to a new trial. If the Supreme Court fails to find error, the Governor, through the Commissioner of Paroles, will be urged to extend executive clemency. Petitions and letters of recommendation, recommending clemency, will be filed, and the Commissioner of Paroles, and in all probability the Governor, personally, will carefully review and consider this case and all recommendations and petitions filed in the defendant's behalf, before the defendant is executed, and I argue to you, gentlemen of the jury, that not all, but only a certain percentage of the defendants who are convicted in North Carolina of capital felonies finally suffer the death penalty. You can see, therefore, gentlemen of the jury, that you are only a small cog in the final determination of what may happen to this defendant, even if you find him guilty, as charged in the bill of indictment."

No objection was made to the argument. This Court, nevertheless, granted a new trial, and, *inter alia,* stated:

" 'The State does not ask for the conviction of a defendant except upon the facts and the law, stripped of all extraneous

matter,—the naked facts,' said *Walker, J.,* in *S. v. Davenport,* 156 N.C., 596, 72 S.E., 7. To find the facts is the sole province and responsibility of the jury. Moreover, what consequences the verdict on the facts may bring to defendant is of no concern to the jury. Hence, the remarks here tend to disconcert the jury in fairly and freely deliberating upon the facts and in arriving at a just and true verdict.

"Moreover, here as in the *Little case* it is doubted that the harmful effect of the remarks of the solicitor in appealing for a verdict of murder in the first degree could have been removed from the minds of the jury by full instruction of the trial judge. In *S. v. Noland,* 85 N.C., 576, speaking of a gross abuse of privilege by counsel, *Ruffin, J.,* said: 'After its commission, under the circumstances, it admitted of no cure by anything that could be said in the charge.' See also *Holly v. Holly,* 94 N.C., 96.

"But the contention was made in the *Little case,* as it is here, that exception to the improper remarks not taken before verdict is not seasonable. Under the facts there as here the rule is inapplicable.

"Ordinarily it is the duty of counsel to make timely objection so that the judge may correct the transgression by instructing the jury. *S. v. Suggs,* 89 N.C., 527. And, ordinarily, the failure to object before verdict is held to constitute waiver of objection. *S. v. Tyson,* 133 N.C., 692, 45 S.E., 838. But where, as here, the harmful effect of the remarks is such that it may not be removed from the minds of the jury by instruction of the judge, the reason for the rule requiring the objection to be made before the verdict does not exist."

*See also State v. Dockery,* 238 N.C. 222, 77 S.E. 2d 664.

Other jurisdictions have considered remarks comparable to those here challenged, which, as here, were made during the *voir dire* examination of prospective jurors in capital cases.

In *People v. Johnson,* 284 N.Y. 182, 30 N.E. 2d 465, the district attorney, over defendant's objection, asked numerous prospective jurors, on their *voir dire* examination, whether they knew that, if defendant were convicted and received the death sentence, any jury error could be corrected by judicial appeal or executive clemency. The Court, faced with "such grave error at

the very threshold of the trial as to make it doubtful whether the jury could thereafter render a verdict with full appreciation of its responsibility," reversed the conviction and forcefully explained its reasoning, as follows:

"The vice of the statements and questions of the District Attorney lies not primarily in the incorrectness of the statement that an appeal to the Court of Appeals is compulsory but in the suggestion that the jury's verdict, if against the defendant, cannot be seriously harmful to him because of the opportunities for review. This suggestion is fundamentally unsound and vitiates the trial. No element of our judicial process must be more carefully protected than the function of the jury. The jury has nothing to do with appeals and applications for clemency. They lie in a wholly different field. The jurors have task enough to find the truth and proclaim it by their determination without regard to ultimate consequences. Nothing can be permitted to weaken the jurors' sense of obligation in the performance of their duties. [Citations omitted.]"

A similar holding appears in *Blackwell v. State,* 76 Fla. 124, 79 So. 731, where the defendants were charged with murder. During the *voir dire* examination of prospective jurors, the assistant State's attorney, in the presence of the veniremen, stated that the future action of the Board of Pardons was entitled to consideration by them. The Court granted a new trial and condemned this statement on the theory that it fixed in the minds of the jurors the thought that if they erred in returning a verdict of guilty, the Board of Pardons might or would correct it. *See generally,* as to prosecutorial indiscretions at various stages of the trial, Annotation, 16 A.L.R. 3d 1137; Annotation, 3 A.L.R. 3d 1448.

[3]  We hold that in a capital case improper statements made by a solicitor in the presence of prospective jurors during their *voir dire* examination may well be as prejudicial as a similar statement made by him during argument to the jury.

The position and grave responsibilities of a public prosecutor as the representative of the sovereign were clearly enunciated by Justice Sutherland in *Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314. We quote from that opinion:

"The [district attorney] is the representative not of an ordinary party to a controversy, but of a sovereignty

---

State v. Hines

---

whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. . . .

"It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations and, especially assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none. . . . "

In the context of cases before us, the statement of the solicitor, professedly made to "ease" the "feelings" of a juror concerning her misgivings regarding the death penalty, suggested to the jurors, both prospective and seated, that if verdicts of guilty were returned, the mandatory death penalty, in all probability, might not or would not be imposed.

It is the province of a juror to return a verdict which speaks the truth. This duty is his sole responsibility. We cannot allow this solemn obligation to be diluted by statements *aliunde* the record and foreign to his single duty. In these volatile and bitterly contested cases, in which three human lives hung in the balance, we think the solicitor's statement was intended to, and in all probability did, lighten the solemn burden of the jurors in returning their verdict.

We hold that the challenged statement of the solicitor was improper and unduly prejudicial to these defendants.

We do not deem it necessary to discuss the remaining assignments of error since, in all probability, they will not recur at the next trial.

New trial.

Justices COPELAND and EXUM took no part in the consideration or decision of this case.