An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-171

NORTH CAROLINA COURT OF APPEALS

Filed: 19 August 2014

STATE OF NORTH CAROLINA

v.

Wake County
No. 08 CRS 76979

WILLIAM SCOTT KEANE


Appeal by defendant from judgment entered 15 March 2013 by Judge Michael J. O'Fogludha in Wake County Superior Court. Heard in the Court of Appeals 5 June 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General Linda Kimbell, for the State.*

> *Bruce T. Cunningham, Jr., for Defendant.*

ERVIN, Judge.

Defendant William Scott Keane appeals from a judgment based upon his conviction for first degree rape. On appeal, Defendant contends that the trial court erred by failing to instruct the jury concerning the issue of his guilt of assault inflicting serious injury or, in the alternative, that his trial counsel provided him with constitutionally deficient representation for failing to request the delivery of such an instruction. After careful consideration of Defendant's challenges to the trial court's judgment in light of the record and the applicable law,

we conclude that the trial's court judgment should remain undisturbed.

## I. Factual Background

## A. Substantive Facts

## 1. State's Evidence

J.B.[1] met Defendant in February 2008 at Carolina Ale House, at which she worked. Subsequently, the two of them entered into a nonexclusive sexual relationship, during which they saw each other once or twice a month. On each occasion when the two of them were together, they had sexual intercourse.

In July 2008, Defendant and Jennifer spent the night at the residence of one of Defendant's friends. While Defendant was asleep, his phone rang repeatedly. As a result, Jennifer answered Defendant's phone. After Defendant awoke, Jennifer admitted having answered his phone, causing Defendant to become angry, punch her in the face repeatedly, and force her to remain at that location for hours without leaving his sight for any purpose, including going to the bathroom. Defendant threatened to kill Jennifer and her mother if she contacted the police. Although she did not report Defendant's conduct to law

---

[1]J.B. will be referred to throughout the remainder of this opinion as Jennifer, a pseudonym used for ease of reading and to protect J.B.'s privacy.

enforcement officers, Jennifer did provide that information to her mother and her best friend, Robin Fuller.

After the date upon which Defendant assaulted and restrained her, Jennifer left North Carolina for a month in order to heal. Upon returning to North Carolina, Jennifer resumed her sexual relationship with Defendant. Jennifer and Defendant had sexual intercourse on two occasions between the date of Jennifer's return to North Carolina and 24 October 2008. Although Jennifer did not want to have sexual intercourse with Defendant on those occasions, she was afraid that she would be injured if she rejected his advances.

On 24 October 2008, Jennifer invited several friends to her townhouse for a party which began between 7:00 and 8:00 p.m. During the course of the evening, Jennifer consumed eight to nine alcoholic beverages. At some point during the evening, Jennifer called a co-worker, Andy Maldonado, and invited him to the party. Mr. Maldonado arrived at the townhouse after midnight at a time when only two other guests were still present. After the two remaining guests left, Jennifer and Mr. Maldonado went upstairs to her room. Although Jennifer was intoxicated and felt slightly sick to her stomach, she was neither nauseated nor incoherent and did not fall or stumble on the stairs.

After reaching the bedroom, Jennifer and Mr. Maldonado began kissing on her bed. As the two of them did this, they heard a door slam and the sound of footsteps on the stairs. Shortly thereafter, Defendant, who was in an angry frame of mind, appeared in the doorway, asked what was going on, and told Mr. Maldonado to leave. As Mr. Maldonado retreated down the stairs, Defendant put his hand on Mr. Maldonado's back and pushed him, causing Mr. Maldonado to grab the railing in order to keep from falling. Defendant accompanied Mr. Maldonado to a waiting taxi outside and then reentered the townhouse.

Upon leaving the townhouse, Mr. Maldonado called Ms. Fuller and told her what had occurred. During that conversation, Mr. Maldonado told Ms. Fuller that he believed that Jennifer's safety was at risk and suggested that she call somebody for assistance. After calling the Carolina Ale House for the purpose of obtaining Jennifer's address, Ms. Fuller called 911, explained what had occurred, and requested that a law enforcement officer go to Jennifer's townhouse immediately.

At the time that Defendant returned to the bedroom, Jennifer was lying on the floor next to the bed. Defendant stood above Jennifer, yelled at her, questioned why she had been with Mr. Maldonado, and began to hit her on the head with both hands while making derogatory comments about her. After

striking her many times, Defendant lifted Jennifer off the ground; grabbed her by the hair, arms, and shoulders; made her look him in the eyes; and hit her in the face. Although Jennifer attempted to distract Defendant by telling him that one of his friends had told her that Defendant was married, Defendant resumed his assault upon Jennifer by striking her as she curled up on the floor in an attempt to protect herself. In addition, Defendant called a friend to ask who had told Jennifer that he was married.

After making this phone call, Defendant picked Jennifer up by her hair, made her look in his eyes, and struck her in the face. She fell to the floor and Defendant repeated the act of picking her up and striking her five to six times. As Defendant continued to strike Jennifer and made several phone calls, Ms. Fuller called Jennifer. When she answered the phone, Jennifer began screaming, "Rick told me he was married." Ms. Fuller concluded that something was "very, very wrong," since Jennifer seemed very afraid. After the call ended, Defendant struck Jennifer again, so that she threw up on the bed, the floor, and herself.

At that point, Defendant picked Jennifer up and began to slowly undress her in a "sick" way. Although Jennifer told Defendant that she did want any of "this," she refrained from

resisting given her fear that Defendant was going to kill her. After removing his pants, Defendant began to have sexual intercourse with Jennifer. After completing this act of intercourse, Defendant dressed himself and made a phone call to a friend. At that point, Jennifer dressed herself in a bathrobe, excused herself by saying that she wanted a drink of water, walked downstairs, and left the townhouse.

Upon opening the townhouse door, Jennifer encountered Officer Robert Edmundson of the Raleigh Police Department, who had been dispatched to her residence between 2:20 and 3:00 a.m. and told him that, if Defendant knew that Officer Edmundson was there, he would kill her. After noting the existence of injuries to Jennifer's face, Officer Edmundson told her to go to his patrol vehicle. At that point, however, Defendant emerged from the townhouse.

As Officer Edmundson ordered Defendant to stop and get on his knees, Jennifer identified Defendant as her assailant. Although Defendant acted puzzled and did not initially comply, he eventually got down on one knee before running towards the woods adjacent to Jennifer's townhouse. After a relatively short pursuit, Officer Edmundson apprehended Defendant when he collided with a fence and tripped. Defendant told Officer Edmundson that he had not touched Jennifer and that some other

man had beaten her up. Jennifer gave statements to officers at the townhouse describing the assault, but she did not report that she had been raped.

After encountering Officer Edmundson, Jennifer was transported to the hospital for treatment. At the time that she reached the hospital, bruises and abrasions could be seen on Jennifer's face, head, shoulders, and arms. Jennifer's head was so severely bruised that x-rays were taken. In addition, Jennifer's right eye was severely swollen. As a result of the fact that Jennifer had a hematoma below her right ear, medical personnel had to drain blood from her ear and apply a pressure dressing to prevent further swelling. Jennifer's injuries took about a month to heal.

After speaking with her mother from the hospital, Jennifer reported that she had been raped. According to her mother, Jennifer still cries when reminded of what happened, shakes uncontrollably when the events underlying this case are discussed, is frightened by loud noises, and refuses to answer the door.

Agent Timothy Anguish of the City County Bureau of Identification examined Jennifer's townhouse, took photographs of the interior of the structure, and collected other items of evidence. Agent Anguish did not note any damage to or unusual

condition in the stairwell. A clump of hair, a bracelet, and an earring, along with the vomit-stained clothes that Jennifer had worn on the preceding evening, were found on the bedroom floor adjacent to the bed.

## 2. Defendant's Evidence

Defendant had been involved in a sexual relationship with Jennifer since January or February 2008. On a daily basis, Jennifer would call or send a text message to Defendant in which she requested that he see or have sexual intercourse with her. Although the two of them initially saw each other each week, Defendant subsequently decided that they should see each other on a bi-weekly basis. On each occasion when they were together, Jennifer would initiate sexual contact with Defendant.

Upon waking at a friend's house in July 2008, Jennifer told Defendant that she had answered his phone when his "wife" called. Although Defendant became upset, he did not strike Jennifer on this occasion. They did, however, argue as Defendant drove Jennifer home. After this incident, Defendant stopped interacting or communicating with Jennifer. During this interval, Jennifer reported for work, never left North Carolina, and continued contacting Defendant.

About a month after the July incident, Jennifer contacted Defendant by calling him from a different phone number than the

one that she had previously used. As a result of the fact that Jennifer was distraught and wanted to see Defendant, the two of them met and resumed their sexual relationship.

On the night of 24 October 2008, Jennifer called Defendant repeatedly. After reaching Defendant, Jennifer invited him to the party that was being held at her townhouse, so Defendant took a cab to that location. After telling the cab driver to wait, he knocked on the townhouse door. As a result of the fact that no one answered the unlocked door, Defendant entered the townhouse and went up the stairs to Jennifer's bedroom.

Upon entering the bedroom, Defendant saw Jennifer on her bed with a man standing at the foot of that piece of furniture. At that point, Defendant asked who the man was and if he was interrupting the two of them. After Defendant posed this question, the man exited the bedroom and went down the stairs, followed by Defendant. Although Defendant asked if the man and Jennifer had had intercourse, he did not threaten the man. Once he had paid the cab driver, Defendant went back inside the house.

Upon reentering the bedroom, Defendant asked Jennifer who the man was and was told that he was just a friend from work. After Jennifer attempted to kiss Defendant, he shied away from her advances. Even so, Jennifer began to unbuckle his pants and

perform oral sex on him. After doing that, Jennifer voluntarily undressed herself with Defendant's assistance, placed her clothes on the edge of the bed, and pulled Defendant to her, at which point they had sexual intercourse. As Defendant attempted to kiss Jennifer, he noticed that her breath smelled of stale alcohol, so he ended their sexual encounter and got up. Defendant denied having hit Jennifer and that there was any indication that she had been nauseated.

At that point, Jennifer asked Defendant for the reason that he had ended their encounter, suggesting that he had acted in that manner because he was married. When Defendant asked Jennifer who had told her that he was married, she claimed to have received that information from one of his friends. After Jennifer made this assertion, Defendant called a different friend, asked him if the friend that Jennifer had named had talked to Jennifer, and requested to be picked up from Jennifer's residence. Although Jennifer received a phone call while he talked to his friend, Defendant paid no attention to Jennifer's conversation except to note that Jennifer repeatedly stated that "Rick told me he was married."

Although Defendant attempted to leave, Jennifer became emotional and said that she wanted Defendant to stay. After calling his friend a second time to make sure that he was on his

way, Defendant left the bedroom while hearing Jennifer making noises tending to suggest that she was vomiting, an action that he interpreted as a pretense to induce him stay. As Defendant attempted to leave, Jennifer grabbed his shirt, causing him to jerk away from her and making her fall to her knees. When she fell, Jennifer made an effort to grab onto Defendant. Instead, however, Jennifer hit her face on the bannister or stairway wall.

After helping Jennifer to her feet, Defendant told her that he was leaving. As a result of the fact that he had dropped his phone during their scuffle, Defendant took a moment to attempt to find it. As he searched for his phone, Jennifer dressed herself in a robe and then walked downstairs in advance of Defendant. In view of the fact that Jennifer had preceded him downstairs, the front door was open at the time that he left her townhouse.

As Defendant went out the front door of Jennifer's townhouse, he heard a police officer tell him to freeze. At that point, Defendant noticed that the officer was shining a light on him and had aimed a Taser at him. In surprise, Defendant asked Jennifer what was going on. Although Defendant began to get on his knees in response to the officer's command, he ran away instead given his fear that the officer would shock

or kill him. After slackening his pace and turning to face the officer, Defendant tripped and fell. As soon as Defendant had been restrained, the officer asked Defendant why he had run without receiving any answer. After having been taken into custody, Defendant denied having assaulted or raped Jennifer and claimed that the two had had a consensual sexual encounter.

## B. Procedural History

On 25 October 2008, a warrant for arrest charging Defendant with first degree rape was issued. On 1 December 2008, the Wake County grand jury returned a bill of indictment charging Defendant with first degree rape. The charge against Defendant came on for trial before the trial court and a jury at the 11 March 2013 criminal session of the Wake County Superior Court. On 15 March 2013, the jury returned a verdict convicting Defendant of first degree rape. At the conclusion of the ensuing sentencing hearing, the trial court entered a judgment sentencing Defendant to a term of 384 to 470 months imprisonment. Defendant noted an appeal to this Court from the trial court's judgment.

## II. Legal Analysis

### A. Trial Court Error by Failing to Submit

In his first challenge to the trial court's judgment, Defendant contends that the trial court erred by failing to

instruct the jury concerning the issue of his guilt of assault inflicting serious injury. More specifically, Defendant contends that assault inflicting serious injury is a lesser included offense of first degree rape in this instance and that the evidence would have supported a determination that, although the sexual contact between himself and Jennifer was consensual, Defendant assaulted her in a non-sexual manner and inflicted serious injuries upon her. Defendant is not entitled to relief from the trial court's judgment on the basis of this contention.

## 1. Standard of Review

As a general proposition, arguments "challenging the trial court's decisions regarding jury instructions are reviewed *de novo* by this Court." *State v. Osorio*, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009). "[A]n error in jury instructions is prejudicial and requires a new trial only if 'there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises.'" *State v. Castaneda*, 196 N.C. App. 109, 116, 674 S.E.2d 707, 712 (2009) (quoting N.C. Gen. Stat. § 15A-1443(a)). However,

> [a] party may not make any portion of the
> jury charge or omission therefrom the basis
> of an issue presented on appeal unless the
> party objects thereto before the jury
> retires to consider its verdict . . .
> provided that opportunity was given to the

> party to make the objection out of the
> hearing of the jury.

N.C.R. App. P. 10(a)(2).

Although Defendant requested the trial court to instruct the jury concerning the issue of his guilt of assault on a female during the charge conference, he never made any reference to the possibility that he might be guilty of assault inflicting serious injury during that portion of the proceedings. Moreover, Defendant never objected to the trial court's failure to allow the jury to consider the issue of his guilt of assault inflicting serious injury despite the fact that the trial court specifically asked Defendant if he had any additional objections to the manner in which the jury had been instructed. As a result, Defendant has not properly preserved his challenge to the trial court's failure to allow the jury to consider the issue of his guilt of assault inflicting serious injury for purposes of appellate review.

According to well-established North Carolina law, "an issue that was not preserved . . . nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C.R. App. P. 10(a)(4). Thus, this Court may review a defendant's challenge to the trial court's jury instructions or evidentiary rulings in the event that Defendant

specifically and distinctly contends that the challenged judicial decision amounts to plain error. *State v. Gregory*, 342 N.C. 580, 584, 467 S.E.2d 28, 31 (1996). In the event that the defendant fails to directly argue that the challenged trial court action constituted plain error, however, the defendant is not entitled to plain error review of that action. *State v. Moseley*, 338 N.C. 1, 36, 449 S.E.2d 412, 433-34 (1994), *cert. denied*, 514 U.S. 1091, 115 S. Ct. 1815, 131 L. Ed. 2d 738 (1995). As a result of the fact that Defendant has not argued that the trial court's failure to instruct the jury to consider the issue of Defendant's guilt of assault inflicting serious injury constituted plain error, Defendant has waived the right to any appellate review of this aspect of his challenge to the trial court's jury instructions.

## 2. Validity of Trial Court's Decision

### a. Relevant Legal Principles

Assuming, for purposes of discussion, that Defendant had properly preserved his challenge to the trial court's failure to submit the issue of his guilt of assault inflicting serious injury to the jury, we would conclude that any such contention would have no merit. As a general proposition, a lesser included offense is a crime that "requires no proof beyond that which is required for conviction of the greater [offense]."

*Brown v. Ohio*, 432 U.S. 161, 168, 97 S. Ct. 2221, 2226, 53 L. Ed. 2d 187, 196 (1977). A trial court should instruct the jury concerning the issue of the defendant's guilt of a lesser included offense only if "there is evidence from which the jury could find that such included crime of lesser degree was committed." *State v. Ward*, 286 N.C. 304, 311, 210 S.E.2d 407, 413 (1974) (quoting *State v. Hicks*, 241 N.C. 156, 159, 84 S.E.2d 545, 547 (1954)), *vacated in part on other grounds*, 428 U.S. 903, 96 S. Ct. 3206, 49 L. Ed. 2d 1207 (1976). "Under North Carolina and federal law a lesser included offense instruction is required if the evidence 'would permit a jury rationally to find [the defendant] guilty of the lesser offense and acquit him of the greater.'" *State v. Thomas*, 325 N.C. 583, 594, 386 S.E.2d 555, 561 (1989) (quoting *State v. Strickland*, 307 N.C. 274, 286, 298 S.E.2d 645, 654 (1983), *overruled in part on other grounds in State v. Johnson*, 317 N.C. 193, 203, 344 S.E.2d 775, 781 (1986)). As a result, Defendant would have been entitled to the delivery of an instruction concerning the issue of his guilt of assault inflicting serious injury in the event that all of the elements necessary for a finding that Defendant had committed that offense were also elements of first degree rape and that the record evidence would have permitted the jury to

find that Defendant was guilty of that offense instead of first degree rape.

A person is guilty of first degree rape in the event that he engages in (1) vaginal intercourse with another (2) by force and (3) against the will of the other person and (4) inflicts serious personal injury upon the alleged victim or another person. *State v. Rogers*, 153 N.C. App. 203, 208, 569 S.E.2d 657, 661 (2002) (quoting N.C. Gen. Stat. § 14-27.2(a)(2)(b)), *disc. review denied*, 357 N.C. 168, 581 S.E.2d 442 (2003). An act of vaginal intercourse sufficient to support a rape conviction has occurred in the event that the male sex organ penetrates the female sex organ, however slightly. *State v. Weaver*, 117 N.C. App. 434, 439, 451 S.E.2d 15, 19 (1994) (citing *State v. Sneeden*, 274 N.C. 498, 501, 164 S.E.2d 190, 193 (1968)). "The requisite force necessary to convict on a charge of rape may either be actual, physical force or constructive force in the form of fear, fright, or acts of coercion." *State v. Morrison*, 94 N.C. App. 517, 522, 380 S.E.2d 608, 611 (citing *State v. Hines*, 286 N.C. 377, 380, 211 S.E.2d 201, 203 (1975)), *cert. denied*, 325 N.C. 549, 385 S.E.2d 507 (1989). Consent induced by violence or fear of violence is not effective to preclude a rape conviction. *State v. Armstrong*, 287 N.C. 60, 64, 212 S.E.2d 894, 896 (1975) (citing *State v. Carter*, 265 N.C.

626, 631-32, 144 S.E.2d 826, 829-30 (1965)), *vacated in part on other grounds*, 428 U.S. 902, 96 S. Ct. 3204, 49 L. Ed. 2d 1206 (1976). In determining "whether serious personal injury has been inflicted, the court must consider the particular facts of each case." *State v. Herring*, 322 N.C. 733, 739, 370 S.E.2d 363, 367 (1988) (citing *State v. Roberts*, 293 N.C. 1, 11-17, 235 S.E.2d 203, 210-13 (1977)). As the Supreme Court has stated, the record contains sufficient evidence to support a determination that the perpetrator inflicted serious personal injury for purposes of establishing his guilt of first degree rape in the event that the perpetrator repeatedly strikes the victim before forcing her to engage in sexual intercourse so that there is "one continuous transaction [involving] the rape and the infliction of the serious personal injury." *State v. Locklear*, 320 N.C. 754, 757, 360 S.E.2d 682, 684 (1987) (quoting *State v. Blackstock*, 314 N.C. 232, 242, 333 S.E.2d 245, 252 (1985)).

A determination that a defendant is guilty of the offense of assault inflicting serious injury requires proof that (1) the defendant assaulted the victim, and (2) inflicted serious bodily injury, N.C. Gen. Stat. § 14-33(c)(1), with the factors to be considered in determining whether a serious injury occurred including "pain, loss of blood, hospitalization, and time lost

from work." *State v. Owens*, 65 N.C. App. 107, 111, 308 S.E.2d 494, 498 (1983) (citing *State v. Pettiford*, 60 N.C. App. 92, 94-98, 298 S.E.2d 389, 390-92 (1982), and *State v. Stephenson*, 43 N.C. App. 323, 327, 258 S.E.2d 806, 808 (1979), *disc. review denied*, 299 N.C. 124, 262 S.E.2d 8 (1980)). "Instructions [concerning assault-based] lesser included offenses of first degree rape are warranted only when there is some doubt or conflict concerning the crucial element of penetration." *State v. Williams*, 314 N.C. 337, 351, 333 S.E.2d 708, 718 (1985) (quoting *State v. Wright*, 304 N.C. 349, 353, 283 S.E.2d 502, 505 (1981)). "[I]t is firmly established that" any assault-based lesser included offenses of rape do not have to be submitted to the jury where "the only dispute is whether an admitted act of sexual intercourse was accomplished by consent or force." *State v. Edmondson*, 302 N.C. 169, 171, 273 S.E.2d 659, 660 (1981). In the event that defendant elicits evidence that he did not touch the victim in an assaultive manner and the State elicits evidence that he raped and seriously injured the victim, the record does not support the submission of an assault-based lesser included offense. *See State v. Lampkins*, 286 N.C. 497, 504, 212 S.E.2d 106, 110 (1975), *cert. denied*, 428 U.S. 909, 96 S. Ct. 3220, 49 L. Ed. 2d 1216 (1976). Put another way, "[t]he mere possibility that the jury might believe part but not all of

the testimony of the prosecuting witness" is insufficient to require a trial court to submit to the jury the issue of the defendant's guilt of a lesser included offense. *Id.* Assuming, without in any way deciding, that assault inflicting serious injury is a lesser included offense of first degree rape, a careful analysis of the record developed at trial in light of the fundamental legal principles outlined above establishes that the trial court did not err by failing to allow the jury to consider the issue of Defendant's guilt of assault inflicting serious injury.

## b. Evidentiary Analysis

The record contains two starkly conflicting versions of the events that occurred on 25 October 2008. On the one hand, the evidence elicited by the State tends to show that Defendant beat Jennifer repeatedly before forcing her to have sexual intercourse with him against her will. The evidence elicited by Defendant, on the other hand, tends to show that Jennifer initiated the sexual contact between herself and Defendant, that this contact was entirely consensual, and that Jennifer's injuries resulted from an unfortunate accident that occurred after their sexual encounter had ended. Defendant denied having ever hit Jennifer, adhering to this contention during his conversations with investigating officers and in his trial

testimony. As a result, the State's evidence tends to show that Defendant was either guilty of first degree rape or second degree rape, depending on whether Jennifer's injuries were deemed to constitute serious personal injury, while Defendant's evidence tends to show that Defendant was not guilty of any offense. As a result, given the complete absence of any indication that penetration did not occur, there is simply no evidentiary support for Defendant's contention that a reasonable jury could have convicted him of assault inflicting serious injury based upon the evidence contained in the present record.

In attempting to persuade us that his position concerning this issue has merit, Defendant argues that the jury could, on the one hand, have believed that portion of his testimony in which he asserted that the sexual contact between himself and Jennifer was consensual and that portion of Jennifer's testimony to the effect that Defendant had assaulted her, thereby providing the necessary evidentiary support for a determination that he had assaulted Jennifer and inflicted serious injury upon her. As we have noted, however, well-established principles of North Carolina law do not permit the submission of the issue of a defendant's guilt of a lesser included offense to the jury on the theory that the jury might believe portions of the testimony of multiple witnesses while disbelieving other portions of the

testimony of the same witnesses. *Id.* Moreover, even if this obstacle to the acceptance of Defendant's theory did not exist, we would still be required to reject this portion of Defendant's challenge to the trial court's judgment given that, according to Defendant's testimony, the incident that led to Jennifer's injuries had nothing whatsoever to do with the consensual intercourse in which she and Defendant allegedly engaged. In other words, Jennifer's injuries were either sustained during a "continuous transaction" that resulted in the infliction of "injury . . . on the victim [sufficient] to overcome resistance or to obtain submission," *Blackstock*, 314 N.C. at 242, 333 S.E.2d at 252, or a later incident unrelated to the encounter underlying the first degree rape charge. As a result, the principal argument advanced in support of this aspect of the challenge to the trial court's judgment in Defendant's brief necessarily fails for lack of evidentiary support.

In addition, Defendant points to the fact that the trial court submitted the issue of his guilt of assault on a female to the jury as a lesser included offense, arguing that the same evidence that supported the submission of assault on a female necessitated the submission of assault inflicting serious injury as well. Although assault on a female may, under certain circumstances, be a lesser included offense of rape, N.C. Gen.

Stat. § 15-144.1(a), Defendant's argument is fatally undermined by the same considerations that have led us to conclude that the trial court did not err by failing to allow the jury to consider the issue of his guilt of assault inflicting serious injury. In light of those considerations, we hold that the trial court's decision to allow the jury to consider the issue of his guilt of assault on a female constituted an error favorable to Defendant and provides no basis for a decision to overturn the trial court's judgment. As a result, we conclude, as an alternative basis for upholding the trial court's judgment, that the trial court did not err by failing to instruct the jury concerning the issue of Defendant's guilt of assault inflicting serious injury.

## B. Ineffective Assistance of Counsel

Alternatively, Defendant contends that he is entitled to a new trial on the grounds that the failure of his trial court to request the submission of the issue of his guilt of assault inflicting serious injury to the jury as a lesser included offense constituted ineffective assistance of counsel. We need not discuss this issue at any length, however, given that the considerations that we have outlined in detail above necessitate a conclusion that, had Defendant's trial counsel requested the trial court to allow the jury to consider the issue of his guilt of assault inflicting serious injury, that request should have

been rejected. *State v. Allen*, 360 N.C. 297, 316, 626 S.E.2d 271, 286 (stating that a defendant is not entitled to relief from a conviction based upon deficient performance by his trial counsel in the absence of a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different") (citations and quotation marks omitted), *cert. denied*, 549 U.S. 867, 127 S. Ct. 164, 166 L. Ed. 2d 116 (2006). As a result, Defendant is not entitled to relief from the trial court's judgment on the basis of this contention.

## III. Conclusion

Thus, for the reasons set forth above, we conclude that neither of Defendant's challenges to the trial court's judgment have merit. As a result, the trial court's judgment should, and hereby does, remain undisturbed.

NO ERROR.

Judges ROBERT N. HUNTER, JR., and DAVIS concur.

Report per Rule 30(e).